OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This medical malpractice action on behalf of an infant severely injured during birth was settled before trial between plaintiffs and defendant hospital and doctors, with no mention in the infant’s compromise that it included any compensation for medical expenses. At issue is the claim of plaintiffs’ insurer to recoup, out of the settlement proceeds, medical expenses it paid and will yet pay on behalf of its insured. The trial court allowed intervention for that purpose, the Appellate Division reversed. We conclude that, while the insurer had no lien on the funds, intervention was proper to permit the insurer to establish its contractual right to reimbursement of any medical expenses actually included in the settlement.
 

 The infant plaintiff, Michelle Teichman, has cerebral palsy as a result of perinatal complications. Her mother, plaintiff Camille Teichman, was provided health insurance coverage by her employer under the Empire Plan (the Plan), which is administered by appellant Metropolitan Life Insurance Company (MetLife). Starting in June 1986, pursuant to the Plan, MetLife paid covered medical expenses for Michelle, and as of January 1992 had allegedly paid $169,302.27.
 

 In April 1987, Camille Teichman, individually and on behalf of her daughter, commenced this action against the Community Hospital of Western Suffolk and the doctors involved in the birth. MetLife learned of this action no later than February 1989, when it received subpoenas for medical records from defendants’ attorneys as well as a request for records from plaintiffs’ counsel. On March 1, MetLife wrote to Camille Teichman notifying her of a reimbursement provision in the Plan if she is "repaid” for medical expenses from another source.
 

 Nearly three years later, in November 1991, the parties to the malpractice action entered into a stipulation settling the case for $4,500,000, inclusive of all interest, costs, liens and claims of insurance carriers (including MetLife) — in the words of plaintiffs’ counsel at that time, defendants "are buying their peace.” MetLife, however, was not a party to the action, nor
 
 *519
 
 was it a part of the settlement negotiations. Its only involvement in the lawsuit was release of the child’s medical records, as well as a letter to Camille Teichman indicating that it maintained a lien in the amount of $105,232.82 and requesting that she sign a "Third Party Reimbursement Agreement.” No response appears in the record.
 

 Days after the stipulation, plaintiffs’ attorney wrote MetLife that the action was being settled, that MetLife had no lien, and that if it wished to assert any rights it should do so within 10 days. MetLife responded that it maintained a lien for medical expenses paid as well as a "subrogation right.” Plaintiffs’ attorney denied both, asserting that in the action his clients had sought no recovery for past medical expenses.
 

 On December 16, 1991, after the stipulation was placed on the record but before the infant compromise order was signed, plaintiffs moved to "vacate” MetLife’s claims for reimbursement and for a declaration, based in part on CPLR 4545, that MetLife was without "any rights to settlement proceeds.” MetLife cross-moved for permission to intervene and a declaration that it was entitled to $169,302.27 already expended plus all future payments for medical expenses. The trial court found CPLR 4545 inapplicable to a settlement, granted intervention, and held that by virtue of a lien created under the Plan, MetLife was entitled to be fully reimbursed out of the settlement fund. While agreeing with the trial court that CPLR 4545 was inapplicable to a settlement, the Appellate Division reversed. The Court concluded that nothing in the Plan created a lien or contractual subrogation right in favor of MetLife, and that any contractual right to a refund from the insured was lost by MetLife’s failure to intervene earlier.
 

 Before us appellant MetLife seeks full reimbursement of its payments and future payments, or a hearing to determine the amount of covered medical expenses actually included in the settlement, arguing that plaintiffs would otherwise enjoy a double recovery at ratepayers’ expense. By contrast, plaintiffs insist that the insurer has no lien or other right to the proceeds both because absolutely no medical expenses were included in the settlement and because it delayed too long in seeking intervention. We agree with the Appellate Division that MetLife has no lien on the settlement proceeds but conclude that intervention was proper to allow the insurer to establish its right to recoup covered medical payments, if any, made to plaintiffs by defendants as part of the settlement.
 

 We begin analysis with the substantive lien issue, and next reach the procedural question of intervention.
 

 
 *520
 
 As in the construction of contracts generally, including insurance contracts particularly, we give unambiguous terms their plain and ordinary meaning. Courts "may not make or vary the contract of insurance to accomplish [their] notions of abstract justice or moral obligation”
 
 (Breed v Insurance Co.,
 
 46 NY2d 351, 355,
 
 rearg denied
 
 46 NY2d 940).
 

 MetLife bases its lien claim on the following paragraph of the insurance policy:
 

 "refund to metropolitan for overpayment of
 

 BENEFITS
 

 "If Metropolitan pays benefits under this Plan for Covered Medical Expenses incurred on your account, and it is found that Metropolitan paid more benefits than should have been paid because all or some of those expenses were not paid by You, or You were repaid for all or some of those expenses by another source, Metropolitan will have the right to a refund from You.”
 

 The Plan defines "You” as "the Employee, and you, an eligible Dependent member of the Employee’s Family.”
 
 [1]
 
 The policy thus speaks of a "right to a refund” and says, or suggests, nothing regarding a lien on property. Plainly, this paragraph does not expressly establish a lien, as MetLife readily concedes.
 

 Nor does the paragraph give rise to an "equitable lien” on the settlement proceeds. As we have long recognized, an equitable lien "is dependent upon some agreement express or implied that there shall be a lien on specific property”
 
 (James v Alderton Dock Yards,
 
 256 NY 298, 303,
 
 rearg denied
 
 256 NY 681;
 
 Di Niscia v Olsey,
 
 162 App Div 154). The agreement "must deal with some particular property either by identifying it or by so describing it that it can be identified and must indicate with sufficient clearness an intent that the property so described or rendered capable of identification is to be held, given or transferred as security for the obligation”
 
 (James,
 
 256 NY at 303;
 
 see also, Scivoletti v Marsala,
 
 61 NY2d 806, 809).
 

 
 *521
 
 The unambiguous paragraph of the Plan falls far short of these requirements.
 
 [2]
 
 The refund provision simply states that if the insured is "repaid” for all or some of its medical expenses, appellant "will have the right to a refund.” The Plan does not identify property subject to the right of refund; it does not describe the property in such a way as to make identification possible; and it does not state the parties’ intention that the property be "held, given or transferred as security for [an] obligation.”
 
 (James,
 
 256 NY at 303;
 
 see also, Datlof v Turetsky,
 
 111 AD2d 364, 365.)
 

 By the same token, the Plan did not create a lien under a theory of equitable subrogation. MetLife was, as the Appellate Division noted, entitled to subrogation by operation of law once it made payment on behalf of its insured (205 AD2d at 21;
 
 see also, Federal Ins. Co. v Andersen & Co.,
 
 75 NY2d 366, 372; 16 Couch, Insurance § 61:4, at 239-240 [rev ed]). This right of subrogation, formulated to prevent unjust enrichment, is based upon "principles of equity and natural justice”
 
 (Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.,
 
 240 NY 37, 47).
 

 As we observed recently, "subrogation is the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss”
 
 (Winkelmann v Excelsior Ins. Co.,
 
 85 NY2d 577, 581). But a right to seek recovery from the legally responsible party is not also necessarily a lien, which is a charge or encumbrance upon property. The creation of a lien requires agreement or statute
 
 (see, Baker v Sterling,
 
 39 NY2d 397 [lien created by statute];
 
 Matter of Griffin,
 
 110 AD2d 1054 [lien created by contract];
 
 Aetna Cas. & Sur. Co. v Jackowe,
 
 96 AD2d 37 [lien created by statute];
 
 see also, Hospital Serv. Corp. v Pennsylvania Ins. Co.,
 
 101 RI 708, 227 A2d 105 [contractual subrogation provision did not of itself create lien]). There is no such expression here.
 

 Thus, we agree with the Appellate Division that MetLife had no lien on the settlement proceeds, whether under the Plan or by virtue of subrogation.
 

 That an insurer does not have a lien entitling it to proceed directly against a particular fund, however, is not the end of the inquiry. Under subrogation principles, an insurer might,
 
 *522
 
 for example, seek to recoup covered medical expenses in an action against a tortfeasor; MetLife asserts no such claim here. Rather, MetLife’s remaining claim rests on its right of reimbursement under the insurance contract. Whether it can pursue this claim in the present action is the question to which we now turn.
 

 The Appellate Division determined that although MetLife had a right of refund under its contract, it should not be permitted to intervene because it failed to demonstrate that the settlement actually included payment for past and future medical expenses, a showing MetLife might have made had it sought intervention earlier. That was not the proper test for intervention
 
 (see,
 
 CPLR 1013). The issue, rather, was as the trial court posited in allowing intervention: that MetLife’s claim for a refund could be adversely affected if intervention were not allowed, that there were common questions of law and fact, and that no prejudice was shown in allowing intervention. While MetLife might have separately pursued its contractual right to a refund, it was after all plaintiffs who made it a part of this action by moving to "vacate” any and all claims for reimbursement and by seeking a declaration that MetLife had no "rights to settlement proceeds.”
 

 Finally, plaintiffs urge that intervention was properly denied by the Appellate Division because the settlement could not possibly have included medical expenses. They point to CPLR 4545 (a), the collateral source rule, which provides that in medical malpractice actions
 

 "evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source such as insurance * * *. If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding.”
 

 Plaintiffs argue that, had the trial proceeded, CPLR 4545 would have required that amounts paid and payable by MetLife be "set off” against the judgment and must therefore be presumed to have reduced the settlement.
 

 Both the trial court and the Appellate Division rejected this argument, as do we. By its very terms, CPLR 4545 applies
 
 *523
 
 to admissibility of evidence at trial and to judgments. The statute is silent as to pretrial settlements. As the Appellate Division noted, nothing in the rules governing settlement of an infant’s claim indicates that such settlements must be reduced by collateral source payments
 
 (see,
 
 CPLR 1206, 1207, 1208). Parties to the settlement of an infant’s claim may certainly consider whether the infant has received collateral source payments, but CPLR 4545 does not compel the conclusion that medical expenses were necessarily excluded from the settlement.
 

 To the contrary, here there exists the possibility that the settlement did actually include some payment for medical expenses. The complaint’s third cause of action, for example, alleges that "Camille Teichman * * * has been, and will continue to be forced to expend substantial sums of money in an effort to treat and rehabilitate the infant plaintiff.” Although plaintiffs’ attorney maintains that the complaint sought damages only for out-of-pocket expenses and loss of services, the settlement hearing includes the following exchange:
 

 Plaintiff’s attorney: "There is a claimed lien for Metropolitan Life of over $100,000. * * * [T]here appears to be no legal basis for that”.
 

 Defendant’s attorney: "[I]t is my understanding that this settlement is inclusive of all interest, costs, liens and disbursements”.
 

 Plaintiff’s attorney: "Yes, that’s correct.”
 

 The trial court itself noted that "the settlement amount herein is inextricably intertwined with components of pain and suffering and medical expenses.”
 

 Thus, the trial court did not abuse its discretion in permitting intervention by MetLife. Allowing MetLife to seek a refund of any medical expense payments included in the settlement both prevents a potential double recovery by plaintiffs and assures that tortfeasors, not ratepayers, will ultimately bear the expense.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, and the case remitted to Supreme Court, Suffolk County, for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order modified, etc.
 

 [1]
 

 . The Plan also contains an exclusion for "services or supplies for which You receive payment or are reimbursed as a result of legal action or settlement, other than from an insurance carrier under an individual policy.” MetLife has not asserted, nor could it, that this provision established the claimed lien.
 

 [2]
 

 . Our conclusion that the provision is unambiguous makes it unnecessary to consider the application of the rule that insurance contracts are to be construed against the drafter (see, 205 AD2d 16, 21), and unnecessary to consider extrinsic evidence of the intent of the parties (see,
 
 e.g., W.W.W.
 
 As
 
 socs. v Giancontieri,
 
 77 NY2d 157).