■ VILLAGE OF WATERFORD, Appellant, v RELIANCE INSURANCE COMPANY, Respondent. [640 NYS2d 671] —Peters, J. Appeal from that part of a judgment of the Supreme Court (Viscardi, J.), entered February 15, 1995 in Saratoga County, which denied plaintiff's motion for summary judgment.

In this action for a declaration of rights under a "Commercial General Liability" policy (hereinafter the CGL policy) and an "Employees Errors & Omissions Liability" policy (hereinafter the E & O policy), plaintiff seeks to compel defendant to indemnify it for all costs associated with a Federal action commenced against it entitled *Support Ministries v Village of Waterford* (808 F Supp 120), wherein it was found to have violated the Federal Fair Housing Act (42 USC § 3601 *et seq.* [hereinafter the FHA]).

The underlying facts of the *Support Ministries* action, as relevant herein, revealed that in June 1990 Support Ministries, a not-for-profit corporation, pursued a residence it deemed suitable for persons with AIDS in the Village of Waterford, Saratoga County. Since the proposed use of the building was permitted,[1] it entered into negotiations to purchase the property and contacted plaintiff's Mayor, among others, to begin to educate the community about its proposed use. Various informational meetings were held whereat the community steadfastly maintained its opposition to the proposed use of the residence.[2]

At the October 10, 1990 meeting of plaintiff's Village Board, a vociferous public outcry prompted the suggestion, both in public and during Executive session,[3] to amend the zoning law to specifically preclude this proposal (*see, Support Ministries v Village of Waterford, supra*, at 124). The Village Attorney, Kenneth Varley, thereafter drafted what became Local Laws, 1990, No. 2 of the Village of Waterford (hereinafter Local Law

---

1. Pursuant to section 6.0 (b) (3) of plaintiff's zoning ordinance, a "boarding house" was defined as follows: "a private dwelling in which at least four but not more than ten sleeping rooms are offered for rent and table board may be furnished to roomers, and in which no transients are accommodated."

2. At the September 25, 1990 informational meeting held by Support Ministries, the District Court described the atmosphere as follows: "[Plaintiff's Mayor] attended along with several residents who expressed strong 'moral opposition' to [persons with AIDS] and the establishment of a residence in the [V]illage for [persons with AIDS]. Support Ministries' Executive Director Nancie Northrup Williams testified that these residents had very bad information about the project and 'spent a great deal of time talking about the fact that HIV and AIDS was an illness that people brought on themselves and it was a punishment from God and we had no obligation to respond compassionately to these people' " (*Support Ministries v Village of Waterford*, 808 F Supp 120, 123, *supra*). The sentiment continued in the second public informational meeting held on September 26, 1990, attended by members of the Waterford Board of Trustees, several members of the Zoning Board of Appeals, and between 200 and 250 community members. Again, the District Court noted that "[o]pposition was so strong that the audience grew extremely hostile, so much so that the 'heckled' League of Women Voters moderator left, and [plaintiff's Mayor] took over the meeting" (*supra*, at 123).

3. As recounted by the District Court: "During this executive session, the Village Attorney acknowledged that if Support Ministries applied for a special use permit to use the property as a rooming and boarding house, 'you pretty much have to give it to them.' As a result, the [B]oard discussed amending the definition of 'boarding and rooming houses' in the [V]illage's zoning ordinance" (*Support Ministries v Village of Waterford, supra*, at 125).

No. 2)[4] which so amended the Village's zoning law. Local Law No. 2 was adopted by the Village Board on November 28, 1990.[5]

Support Ministries nonetheless purchased the building on May 29, 1991. Upon the refusal of its request for a certificate of occupancy, it applied to plaintiff's Zoning Board of Appeals (hereinafter ZBA) for authorization to use the property as was permitted prior to the enactment of Local Law No. 2 and included a request for a variance to increase the amount of legal occupants. Public hearings continued before the ZBA over the next three months as had the negative sentiment of the community (see, *Support Ministries v Village of Waterford, supra,* at 127). At one of these hearings, a letter was read from attorney Kathleen Resnick, President of the Capital Region Chapter of the New York Civil Liberties Union, wherein she advised the ZBA of a Federal case where it was found that actions similar to those taken by plaintiff were violative of the FHA due to intentional discrimination (*supra,* at 135).

On March 26, 1992, the ZBA denied the application in its entirety which prompted Support Ministries to commence its action in Federal District Court alleging a violation of the FHA (see, supra). Plaintiff timely notified defendant of the commencement of this action and was advised by letter dated June 5, 1992 of the definitional limitations contained in the E & O policy, including exclusion N which denies coverage "[f]or damages arising out of or in any way connected with the actions of any administrative board * * * [that arises] out of * * * Land Use Planning; or Municipal Zoning". Thus, it advised plaintiff that "[b]ased on the limited information presently available to us, it is possible that your policy * * * may not provide coverage or protect you from this claim" and further "reserve[d] all rights to so proceed without waiving any rights that either you or the company have under the policy". However, defendant did agree to pay the counsel fees of Varley during this time.

The record reflects yet another reservation of rights made by

4. The definition of "boarding house" was now limited to a private dwelling which can accommodate "at least four but not more than six sleeping rooms * * * offered for rent". It further provided that such type of boarding house "shall not include a nursing home, convalescent home, hospice, or other building which is primarily intended to provide accommodation for persons suffering from or recovering from or recuperating from any illness or disease or whose occupants regularly receive any medical or nursing care or treatment" (Local Law No. 2).

5. The District Court found it significant that never before had the community seen a need to amend the definition of a boarding or rooming house prior to Support Ministries expressing an interest in this building (*Support Ministries v Village of Waterford, supra,* at 125).

defendant under the E & O policy when it advised Varley, by letter dated July 6, 1992, to provide it with copies of all pleadings and advise it of all "legal activities" emanating as a result of the Federal action. Although Varley acknowledged receipt of such request by letter dated July 28, 1992, no further correspondence occurred until October 14, 1992 when Varley corresponded with defendant to describe the deposition testimony of plaintiff's Mayor, members of the ZBA and the Town Board, and to further advise that the case was scheduled for trial on October 26, 1992.

Thereafter, upon defendant's refusal to extend authority to settle, the matter went to trial as scheduled. By letter dated October 28, 1992, defendant advised that coverage under the E & O policy was provided under a reservation of rights and that their investigation now revealed that in addition to exclusion N, exclusion G, *inter alia*, might preclude coverage due to plaintiff's "willful violation of the law"[6] when it amended the zoning law to purposefully prohibit persons with AIDS from residing in such facility.

The District Court, by decision dated December 4, 1992, found plaintiff guilty of, *inter alia*, a violation of the FHA under both a discriminatory intent and disparate impact theory (*Support Ministries v Village of Waterford, supra*, at 133). As a result, by letter dated December 10, 1992, defendant withdrew a previous offer to arbitrate the coverage issues under the E & O policy and disclaimed coverage relying upon, *inter alia*, exclusions G and N. By separate letter dated October 28, 1992, defendant disclaimed coverage under the CGL policy.

Plaintiff thereafter commenced this action seeking indemnification and, after issue was joined and discovery conducted, moved for summary judgment. Defendant cross-moved, seeking a declaration that it had no duty to defend, negotiate, settle and/or indemnify plaintiff with respect to the *Support Ministries* action. Supreme Court granted defendant's cross motion and plaintiff now appeals.

Plaintiff contends that for exclusion N to be applicable, the acts giving rise to the claim must have arisen "exclusively" out of the actions taken by an administrative board as they relate to municipal zoning. Since the acts underlying the *Support Ministries* litigation related to the acts of the Village Board, comprised of elected officials who acted in their *legisla-*

---

6. Exclusion G states that the provision for insurance "does not apply to any claim made * * * [b]y reason of any deliberately dishonest or fraudulent act or omission, or any criminal or malicious act or omission, or any willful violation of law".

*tive* capacity in adopting Local Law No. 2, these claims did not arise "exclusively" from actions taken by an administrative board. Further, plaintiff contends that since the ZBA acted in conformance with the provisions of Local Law No. 2 pursuant to its grant of authority, exclusion N of the E & O policy is inapplicable to its actions as well. We disagree.

Giving the terms of this insurance contract their "plain and ordinary meaning" (*Teichman v Community Hosp.*, 87 NY2d 514, 520; *see, United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229, 232), we do not find support for the limited interpretation urged by plaintiff. We find no language which mandates that the underlying damages must have arisen "exclusively" from the actions taken by an administrative board when such provision includes phrases like "aris[e] out of" or "in any way connected with". Here, the District Court found that not only had the Village Board violated the FHA by its enactment of Local Law No. 2, but also that the ZBA had violated the FHA by its application of such law. Thus, we find it clear that the claims underlying the *Support Ministries* litigation "arose out of" actions taken not only by the ZBA but also by actions taken by the Town Board—actions most certainly "connected with" that action. Having failed to show entitlement to indemnification as a matter of law, denial of summary judgment to plaintiff was proper (*see, Alvarez v Prospect Hosp.*, 68 NY2d 320, 324).

We further find no merit to plaintiff's contention that defendant's failure to notify it in its letter of June 5, 1992 that reliance was also being placed upon the "willful violation of law" provision—exclusion G of the E & O policy—precluded it from now asserting it as a basis for denial under the theories of waiver or estoppel. Rejecting any claim of waiver since the issue involves the existence or nonexistence of coverage (*see, Schiff Assocs. v Flack*, 51 NY2d 692, 698), we find that even under an estoppel theory, plaintiff has failed to sustain its burden of showing that it has been prejudiced by defendant or induced into believing that such provision was already found inapplicable and, as a consequence, changed its position in reliance thereon to its detriment (*see, Guberman v William Penn Life Ins. Co.*, 146 AD2d 8, 12). Instead, the record reflects that plaintiff suffered no prejudice and has no basis to claim a reliance upon the assertion of only that which was detailed in the June 5, 1992 letter because defendant continually placed it on notice that it reserved its right to assert further possible exclusions to coverage (*supra*, at 13).

Plaintiff was keenly aware that Support Ministries claimed

that it violated the FHA either by intentional discriminatory acts in its outright refusal of housing or by the disparate impact which resulted from its refusal of housing.[7] Moreover, the record discloses that despite its requests, defendant was not advised until approximately 10 days before trial of the ongoing deposition testimony emanating from plaintiff's officials. Upon learning of the details of such testimony, defendant timely notified plaintiff of the potential applicability of exclusion G (cf., Hartford Ins. Group v Mello, 81 AD2d 577, 578). Further undercutting any claim of prejudice is the fact that plaintiff had fully paid representation by its Village counsel who independently managed its defense and clearly championed its interest, even against defendant, when it was advised that defendant would not give authority for settlement. Upon this basis and a similar lack of reliance thereon, we reject any claim of estoppel asserted against the CGL policy (see, Guberman v William Penn Life Ins. Co., supra, at 12).

We further find no merit to plaintiff's claim that defendant acted in bad faith when it refused to settle the Support Ministries action. Plaintiff failed to show that defendant acted in " 'gross disregard' of [its] * * * interests" (Pavia v State Farm Mut. Auto. Ins. Co., 82 NY2d 445, 453), especially since defendant had just been advised of the results of ongoing deposition testimony and had appropriately believed that it had no liability under the policy.

Mikoll, J. P., Crew III, Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed, with costs.

---

7. The fact that the District Court ultimately found plaintiff to have violated the FHA under two separate theories, one not involving an intentional act, does not change our conclusion (see, Rhinebeck Bicycle Shop v Sterling Ins. Co., 151 AD2d 122).