**PRIMAX RECOVERIES
INCORPORATED,
Plaintiff,**

v.

**Lisa CAREY, Jerry's Accommodations, Kline & Sheldon, Richard A. Sheldon, Edward Lindberg, and Jean M. Lindberg, Defendants.**

**No. 00 Civ. 8337(GEL).**

United States District Court,
S.D. New York.

Aug. 23, 2002.

Kenneth A. Beck, Beck & Beck, LLC, Stratford, Connecticut, for Plaintiff Primax Recoveries Incorporated.

E. Kevin Agoglia, Agoglia, Fassberg, Holland & Crowe, P.C., Mineola, New York, for Defendant Lisa Carey.

Eileen T. Rohan, Dubow & Smith, Bronx, New York, for Defendant Jerry's Accommodations.

Frank J. Pecorelli, Jr., Ahmuty, Demers & McManus, Albertson, New York, for Defendants Edward Lindberg and Jean M. Lindberg.

## OPINION AND ORDER

LYNCH, District Judge.

Plaintiff Primax Recoveries Incorporated ("Primax") is the assignee of an employee benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, that paid $91,688.88 to cover medical expenses incurred by defendant Lisa Carey as a result of an accidental injury. Primax brings this action pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) (1994 ed.), seeking a lien in that amount against any award or settlement that Carey might receive from defendants Jerry's Accommodations, Edward Lindberg, and Jean Lindberg (collectively "tort defendants")[1] in a negligence action pending in the Supreme Court of the State of New York, New York County.[2] Primax also seeks attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1). Both Primax and Carey have moved for summary judgment.[3] For the reasons set forth below, Primax's motion will be denied, and Carey's granted.

## BACKGROUND

The underlying facts are undisputed. On July 10, 1999, Carey, an employee of Interim Services, Inc. ("Interim") and a participant in Interim's self-funded Employee Welfare Benefit Plan ("the Plan") provided by CIGNA Healthcare ("CIGNA"), was injured in an accident on the tort defendants' premises. (Pl. Mem. at 1–2.) To cover the resulting medical expenses, Carey received roughly $91,668.88 in benefits from CIGNA. (*Id.* at 2.) Carey received these benefits subject to the Plan's third-party liability provision that sought to exclude from coverage "expenses for which another party may be responsible as a result of having caused or contributed to the Injury or Sickness." (Pl.Ex. A

---

1. A stipulation of discontinuance was entered against defendants Kline & Sheldon and Richard A. Sheldon on May 25, 2001.

2. The state court action is filed under Index Number 119554/99. In that action, Carey seeks damages sustained in a fall resulting allegedly from the tort defendants' negli-

gence. (Rohan Aff., Verified Bill of Particulars ¶¶ 4–8.)

3. The tort defendants have submitted affirmations opposing Primax's motion and supporting Carey's. (*See* Rohan Aff.; Pecorelli Aff.)

at 53.) Specifically, the provision instructs the insured that:

> If you incur a Covered Expense for which, in the opinion of CG [CIGNA], another party may be liable:
>
> 1. CG shall, to the extent permitted by law, be subrogated to all rights, claims, or interests which you may have against such party and shall automatically have a lien upon the proceeds of any recovery by you from such party to the extent of any benefits paid under the Policy. You or your representative shall execute such documents as may be required to secure CG's subrogation rights.
>
> 2. Alternatively, CG may, at its sole discretion, pay the benefits otherwise payable under the Policy. However, you must first agree in writing to refund CG the lesser of:
>
> a. the amount actually paid for such Covered Expenses by CG; or
>
> b. the amount you actually received from the third party for such Covered Expenses;
>
> at the time that the third party's liability is determined and satisfied, whether by settlement, judgment, arbitration or award or otherwise.

(*Id.*) As permitted by paragraph two, CIGNA elected to pay Carey's benefits, but did not secure a written agreement from Carey to refund the specified amounts.

In 1999, Carey filed an action against the tort defendants in New York state court, alleging that the fall was the product of their negligence. (Pl. Mem. at 2.) Primax, a fiduciary of the Plan authorized to administer claims for reimbursement and subrogation, is not a party to the state suit, but is the assignee of the Plan's rights for purposes of collection. The state action remains pending; no judgment has been entered, and no settlement has been reached.

Primax brought this action on October 31, 2000, pursuant to the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a)(3), seeking a lien against any judgment or settlement Carey might receive from her state tort claims. ERISA governs "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer," 29 U.S.C. § 1002(1), "if it is established or maintained ... (1) by an employer engaged in commerce or in any industry or activity affecting commerce," 29 U.S.C. § 1003(a)(1). The parties agree that the Plan in which Carey participated is such a plan, and as a result, that Primax may bring an action pursuant to ERISA's civil enforcement provision for "appropriate equitable relief ... (ii) to enforce ... the terms of the plan." 29 U.S.C. § 1132(a)(3)(B).

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties agree that there are no issues of fact, and that the questions presented are purely matters of law, on which summary judgment is appropriate.

▮ Neither side, however, addresses what appears to be the decisive question in the case: whether the relief Primax requests is equitable relief available under ERISA's grant of jurisdiction to the district courts. In a decision rendered after the motions in this case were filed, the Supreme Court resolved that question, ruling by a 5–4 vote that the civil enforcement provision of ERISA does not autho-

rize the relief sought by Primax. *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (Scalia, J.).[4]

Plaintiffs making claims under § 502(a)(3) of ERISA must seek "equitable relief." 29 U.S.C. § 1132(a)(3)(B). On the surface, it might appear obvious that Primax seeks such relief, as its complaint demands a collection of apparently equitable remedies such as a declaration that it is entitled to recover from Carey an amount equal to the medical benefits paid to her under the Plan; an injunction requiring Carey to repay such amount, and prohibiting her from disposing of any settlement proceeds in a manner inconsistent with Primax's asserted right to recover; restitution of an amount equal to the benefits paid under the Plan; and the imposition of a constructive trust in favor of Primax on any settlement obtained by Carey. (Compl. at 4–5, ¶¶ A–E.)

In *Knudson*, however, a narrow majority of the Supreme Court concluded that an action such as this one, in which an insurer or its assignee in form requests injunctive and declaratory relief to enforce the reimbursement provision of the Plan, in substance seeks merely legal relief, "to impose personal liability on [the benefit recipient] for a contractual obligation to pay money." 122 S.Ct. at 715. In *Knudson*, as here, the

insurer's assignee sought injunctive and declaratory relief, but the Court noted that the injunctive relief demanded was essentially an order to pay what the contract allegedly required, and "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Id.* at 713. There, as here, the assignee characterized its claim as one for restitutionary relief, but the Court, citing the "fine distinction between restitution at law and restitution in equity," *id.* at 715, held that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 714–15.

The Court defined restitution in equity as "a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property *in the defendant's possession.*" *Id.* at 714 (emphasis added). Although Primax characterizes its claim as one for the imposition of a constructive trust or lien, the Court's opinion makes clear that the relief it actually seeks is not properly characterized by these equitable concepts. When a defendant is not in possession of "particular funds that, in good conscience, belong to [the insurer],"

**4.** Although the parties of course cannot be faulted for failing to cite *Knudson*, the issue it decides had been vigorously debated by several Courts of Appeals, in a series of cases dating back to 1996, none of which are cited by the parties. The position ultimately adopted by the Supreme Court had been asserted by the Ninth Circuit in a series of cases beginning with *FMC Medical Plan v. Owens*, 122 F.3d 1258 (9th Cir.1997). *See also, e.g., Cement Masons Health and Welfare Trust Fund v. Stone*, 197 F.3d 1003 (9th Cir.1999) (W.Fletcher, J.). The Ninth Circuit's logic, however, had been rejected in the Seventh and Eleventh Circuits. *Administrative Com-*

*mittee v. Gauf*, 188 F.3d 767, 770–71 (7th Cir.1999) (Ripple, J.); *Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1353 n. 5 (11th Cir.1998). The Eighth Circuit had earlier taken the same position as the Seventh and Eleventh Circuits. *Southern Council of Indus. Workers v. Ford*, 83 F.3d 966, 969 (8th Cir.1996). Another Seventh Circuit opinion attempts to reconcile some of these cases, suggesting that reimbursement suits might be legal or equitable depending on the precise characterization of the remedy sought by the plaintiff. *Wal–Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir.2000) (Posner, J.).

the remedy is restitution at law characterized as "the imposition of personal liability for the benefits ... conferred upon [the defendant]." *Id.* at 715. In this case, as in *Knudson,* "The basis for [Primax's] claim is not that [Carey] hold[s] particular funds that, in good conscience, belong to [Primax], but that [Primax] is contractually entitled to *some* funds for benefits that they conferred. The kind of restitution that [Primax] seek[s], therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon [Carey]." *Id.*[5]

Although the majority's reasoning was sharply criticized in two dissenting opinions, *id.* at 719 (Stevens, J., dissenting); *id.* at 720 (Ginsburg, J., dissenting), *Knudson* authoritatively resolves the scope of ERISA's civil enforcement provision. As noted by Justice Ginsburg in dissent, "[a]fter today, ERISA plans and fiduciaries unable to fit their suits within the confines the Court's opinion constructs are barred from a federal forum; they may seek enforcement of reimbursement provisions like this one here at issue only in state court." *Id.* at 722. Primax's action does not fit into *Knudson's* confines. Carey does not yet possess funds to which Primax claims it is entitled. Under the Court's analysis, any lien or claim for reimbursement against her would require "the imposition of personal liability for the benefits" conferred, or restitution at law. Accordingly, plaintiff's action is not authorized by ERISA, and summary judgment must be entered for defendants.[6]

■ Although the above discussion is sufficient to dispose of the case, Primax's action would fail on other grounds, even if the relief sought were properly characterized as equitable. Whether Primax can recover benefits paid to Carey from a judgment against or settlement with the tort defendants depends on the terms of the Plan. *See, e.g., U.S. Healthcare, Inc. v. O'Brien,* 868 F.Supp. 607, 612–13 (S.D.N.Y.1994) (denying insurer's summary judgment motion in an action for

---

**5.** The only factual distinction between this case and *Knudson* concerns the timing of the federal suit. In that case the Knudson sued after the state action resulted in a settlement, while Primax sued while the tort action remains unresolved. But the Supreme Court cited the fact that "the funds to which petitioners claim an entitlement under the Plan's reimbursement provision—the proceeds from the settlement of respondents' tort action— are not in respondents' possession" as a significant factor in finding a constructive trust an inappropriate remedy. *Id.* at 715. Surely the same conclusion follows *a fortiori* when the "settlement proceeds" are in nobody's possession, because they are the entirely hypothetical fruit of a potential future settlement that does not yet exist and may never come into being at all.

**6.** Although some Court of Appeals decisions pre-dating *Knudson* treated the question discussed in the text as one of jurisdiction, *Owens,* 122 F.3d at 1262; *Gauf,* 188 F.3d at 770–71, the Ninth Circuit subsequently clarified that "the unavailability of an equitable remedy does not mean that the district court is without subject matter jurisdiction, but, rather, means that the plaintiff has failed to state a claim upon which relief can be granted," and that the resulting dismissal "is properly a dismissal on the merits rather than a dismissal for want of subject matter jurisdiction." *Cement Masons,* 197 F.3d at 1007–08. This appears to be the better view. The Supreme Court did not address the question in *Knudson,* however, simply affirming the Ninth Circuit's judgment, which in turn affirmed the district court's grant of summary judgment and stated (curiously in light of the prior precedent in *Cement Masons,* which it expressly acknowledged) that "[f]or our purposes, ... the dismissal could be based either on lack of subject matter jurisdiction or on the merits." *Great–West Life & Annuity Ins. Co. v. Knudson,* 208 F.3d 221, 2000 WL 145374, at *1 n. 5 (9th Cir.2000) (unpublished opinion).

declaratory judgment regarding its rights to recover proceeds from a pending state medical malpractice action); *Vreeland v. Cardi,* 134 F.Supp.2d 270, 274 (E.D.N.Y. 2000) (denying cross-motions for summary judgment because of factual questions about the allocation of settlement proceeds where the plan makes clear what type of proceeds are reimbursable). Accordingly, Primax's right to recover benefits paid depends "not on any federal ERISA common law, but on the subrogation language contained in the particular plan document at issue." *Vreeland,* 134 F.Supp.2d at 273. The Plan is a contract, in which the insurer can give up or modify any rights it could have asserted under ERISA, drafting broader or narrower rights of recovery. *U.S. Healthcare,* 868 F.Supp. at 613.

 Under the Plan, regardless of whether Primax seeks a lien, the right of subrogation, or reimbursement, the insurer may recover only "Covered Expenses"—the expenses of Carey's medical treatment—for which a third party is liable. In New York, however, if the insured wins a judgment in a state tort action, as a matter of law no portion of the judgment would represent medical expenses. New

York's collateral source rule, § 4545(c) of New York's Civil Practice Law and Rules ("CPLR"), requires that a plaintiff's award be reduced by "any such cost or expense [that] was or will with reasonable certainty, be replaced or indemnified from any collateral source." CPLR 4545(c). The rule thus prevents Carey from recovering from the tortfeasors expenses that she has already recovered from a collateral source, such as medical insurance. Pursuant to that rule, if Carey prevails in her state court action, any judgment she receives will·be reduced by the amount awarded to her under the Plan, specifically, by the $91,688.88 Primax seeks. Consequently, no part of such a judgment would constitute "Covered Expenses" recoverable by Primax.[7]

 Settlements are not limited by the collateral source rule. *See, e.g., Teichman v. Community Hospital of Western Suffolk,* 87 N.Y.2d 514, 522–23, 640 N.Y.S.2d 472, 663 N.E.2d 628 (1996) ("CPLR 4545 applies to admissibility of evidence at trial and to judgments. The statute is silent as to pretrial settlements.") (allowing insurer to intervene in medical malpractice action).

---

7. An insurer can contract for recovery on *any* payment received by the insured in subsequent litigation. *See, e.g., Nossoughi v. Federated Department Stores, Inc.,* 669 N.Y.S.2d 479, 175 Misc.2d 585, 590 (1st Dept.1998). Primax does not claim that the Plan should be interpreted to reach any judgment or settlement other than one for covered expenses. Carey claims that the Plan only entitles Primax to portions of a judgment or settlement paid specifically for covered expenses. (Pl. Mem. at 6.) The Court agrees. An interpretation of the contract that permitted Primax to recover the benefits it had paid out of a recovery that was intended to compensate Carey for pain and suffering, for example, would be contrary to the "background of commonsense understandings and legal principles that the parties may not have bothered to incorporate expressly but that operate as default rules to govern in the absence of a clear expression

of the parties' intent that they do not govern." *Wal–Mart Stores,* 213 F.3d at 402. As Judge Posner noted in that case, a broader interpretation of the reimbursement and subrogation provisions of the Plan could "gratuitously deter the exercise of the tort rights of plan participants" by creating the fear that a small recovery that was entirely appropriated by the insurer could leave the tort victim, after legal expenses, "worse off ... than she would have been had she not sued." *Id.* This is particularly true under New York's collateral source rule, which would first reduce the jury's verdict by the amount of covered expenses. If the tort victim then had to reimburse the insurer out of the resulting judgment, the tort victim would not be fairly compensated for her injuries. Such a result could not be countenanced unless the Plan's contractual language was extremely explicit that the parties intended this result.

Carey does not dispute that if she settled with the tort defendants, Primax could pursue any "Covered Expenses" included in the settlement amount. (Def. Mem. at 8.) At this point, however, whether any settlement would include "Covered Expenses" is merely speculative. Indeed, unless Primax is represented at the negotiating table, it is highly unlikely that the parties to the tort suit would characterize any sums to be paid as a recovery of covered medical expenses. And of course, whether any settlement will be reached at all cannot now be predicted. Where claims "depend on the future course of the state action and on the nature of future settlements or judgments," this district has found that "declaratory relief is premature." *U.S. Healthcare*, 868 F.Supp. at 615.

Stripped of all its procedural complexities, the dispute before this Court is between an insured individual, who received money to cover medical expenses from her insurance plan and is now seeking damages from the third parties who allegedly caused her injury, and her insurer, who wants the money paid for those covered expenses returned if the responsibility for the harm can be placed on those third parties. In the most desirable resolution of such a conflict (assuming the third parties are ultimately found liable), the victim would receive any additional damages due from the tortfeasors, and the insurer would receive the covered expenses from the tortfeasors. This preferred resolution has been articulated, supported, and pursued by both the Second Circuit and the New York Court of Appeals. *See, e.g., Allstate Insurance Company v. Mazzola*, 175 F.3d 255, 258 (2d Cir.1999) (describing the "dual objective" of the equitable doctrine of subrogation as seeking "first, to prevent the insured from recovering twice for one harm, as it might if it could recover from both the insurer and from a third person

who caused the harm, and second, to require the party who has caused the damage to reimburse the insurer for the payment the insurer has made") (citations omitted); *Teichman*, 87 N.Y.2d at 523, 640 N.Y.S.2d 472, 663 N.E.2d 628 (allowing the insurer to intervene in a state action because "[a]llowing [the insurer] to seek a refund of any medical expense payments included in the settlement prevents a potential double recovery by plaintiffs and assures that tortfeasors, not ratepayers, will ultimately bear the expense").

The real issue presented in this case is to best accomplish the preferred resolution, such that how, if the tort defendants are held liable in the state action, Carey recovers only once and Primax recovers what it has expended for covered expenses from the tortfeasors, and not from monies intended to compensate Carey for other losses. Allowing Primax the relief it seeks in this Court—whether that relief is properly characterized as equitable or legal—would not effectively further that goal.

■■■ Primax, however, is not without a remedy that *would* further that goal. The Plan gives Primax subrogation rights. " 'Subrogation is the right one party has against a third party following payment, in whole or in part, of a legal obligation that ought to have been met by the third party.' ... The doctrine of equitable subrogation allows insurers to 'stand in the shoes' of their insured to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss." *Allstate*, 175 F.3d at 258 (internal citation omitted). As a subrogee, Primax would be able to seek recovery of expenses from the tort defendants, even though CPLR 4545(c) prevents Carey from pursuing that claim. Since CPLR 4545 was designed "to modify the common-law collateral source rule so as to

prohibit a double recovery, permitting the health insurer to recover its out-of-pocket expenses from the tortfeasor's insurer does not violate such intent." *Nossoughi,* 175 Misc.2d at 589, 669 N.Y.S.2d 479. *See also Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris Inc.,* 113 F.Supp.2d 345, (E.D.N.Y.2000) (adopting the *Nossoughi* approach to equitable subrogation and CPLR 4545). If Primax exercises its subrogation rights by intervention in Carey's state-court action, it can participate in any settlement negotiations and protect its claim for covered expenses. If Primax does not wish to intervene, it can bring its claim against the tort defendants in a separate action since it is "independent" of Carey's claims. *See, e.g., Nossoughi,* 175 Misc.2d at 591, 669 N.Y.S.2d 479.

Accordingly, even if the relief Primax seeks were properly characterized as equitable, this Court finds that such relief would not do equity, and that the proper remedy to enforce its rights without prejudice to those of other parties is, after all, in state court.

## CONCLUSION

Primax's motion for summary judgment and attorney's fees and costs is denied. Carey's cross motion is granted. Judgment will enter dismissing the complaint on the merits.

SO ORDERED.