■ M & B JOINT VENTURE, INC., Respondent, v LAURUS MASTER FUND, LTD., et al., Appellants, et al., Defendants. [853 NYS2d 300]—

Plaintiff claims an equitable lien in the face of its failure to obtain an allegedly agreed-upon mortgage to secure a $490,000 bridge loan it extended to defendant Penthouse International, Inc., in connection with the refinancing of the latter's townhouse, which mortgage was intended to be secondary to Laurus's $24 million consolidated first mortgage. There was a basis for the notice of pendency (see 5303 Realty Corp. v O & Y Equity Corp., 64 NY2d 313, 320 [1984]). The evidence, not only of the bridge loan but also of the conversation with a Laurus official and a Penthouse representative during which Penthouse allegedly agreed to the mortgage on the property and Laurus was made aware of the mortgage, supplemented the allegations of the complaint to sufficiently state a cause of action for an equitable lien (see Teichman v Community Hosp. of W. Suffolk, 87 NY2d 514, 520 [1996]).

However, the cause of action for unjust enrichment should have been dismissed because plaintiff failed to identify the benefit bestowed on Laurus as a result of the bridge loan (see CDR Créances S.A. v Euro-American Lodging Corp., 40 AD3d 421, 422 [2007]). The general conclusion that Laurus's entire transaction would otherwise not have gone through was neither alleged in the complaint nor a reasonable inference therefrom. Similarly, it was not alleged that plaintiff extended the loan at

Laurus's behest (*see General Sec. Prop. & Cas. Co. v American Fleet Mgt., Inc.*, 37 AD3d 345, 346 [2007]; *Kagan v K-Tel Entertainment*, 172 AD2d 375, 376 [1991]).

We have considered appellants' other contentions and find them unavailing. Concur—Lippman, P.J., Mazzarelli and Sweeny, JJ.

Gonzalez and McGuire, JJ., concur in part and dissent in part in a memorandum by McGuire, J., as follows: I agree with the majority that Supreme Court erred in denying that aspect of defendants-appellants' motion to dismiss which sought dismissal of the cause of action for unjust enrichment. I disagree, however, that the court properly denied that aspect of that motion which sought dismissal of the claim for an equitable lien, and that Laurus' separate motion to cancel the notice of pendency was properly denied. Accordingly, I respectfully dissent in part.

On February 23, 2004, defendant Penthouse International, Inc. (PHI) entered into a series of agreements with defendant Laurus Master Fund.[1] Pursuant to the agreements, Laurus provided a total of $24 million to PHI in exchange for a mortgage on a townhouse located at 14-16 East 67th Street (the premises). On that same day, PHI conveyed the premises to P.H. Realty Associates, LLC (P.H. Realty), a holding company in which PHI held a 99% interest. P.H. Realty, in turn, delivered a deed in lieu of foreclosure to Laurus, which placed the deed in escrow. On April 15, 2004, the agreements evincing Laurus' mortgage on the premises and the deed between PHI and P.H. Realty were recorded.

PHI defaulted on the agreements in August 2004, and Laurus obtained a judgment of foreclosure and sale in January 2006. P.H. Realty conveyed the premises to 14-16 East 67th Street Holding Corp., an entity wholly owned by Laurus, by a deed recorded on May 25, 2006.

On October 20, 2006, plaintiff commenced this action claiming, among other things, that it has an equitable lien on the premises and asserting a cause of action for, among other things, unjust enrichment. In the complaint, plaintiff alleges that "[i]n February, 2004 P.H. Realty approached [plaintiff] and asked [plaintiff] to provide P.H. Realty with a Loan in the amount of . . . [$490,000] . . . to enable P.H. Realty to acquire and subsequently refinance [the premises] . . . ." Plaintiff also alleges that "[i]t was understood and agreed that the Loan was short term purchase money financing to be used by P.H. Realty

---

1. Laurus Master Fund in its capacity as an agent of 14-16 East 67th Street Holding Corp. was also named as a defendant.

in the acquisition of the [premises] and the subsequent refinancing of the mortgage debt on the [premises]," and that "[i]t was understood and agreed that in connection with the Loan . . . P.H. Realty was to execute and deliver to [plaintiff] a promissory note and a security interest in the [premises] which security interest would be a second priority mortgage behind Laurus who [sic] held the first mortgage on the [premises]." According to plaintiff, it transmitted $490,000 to defendant Newman, the attorney who acted as the escrow agent for PHI and P.H. Realty, with instructions to hold the funds in escrow until plaintiff or Newman received "a fully executed promissory note and second priority mortgage secured by the [premises]." Plaintiff alleges, however, that Newman released the funds to P.H. Realty without obtaining the promissory note and second priority mortgage. Plaintiff claims that it was repaid $100,000 of the loan, but that an unpaid balance of $390,000 remains due. In addition to filing its summons and complaint, plaintiff filed a notice of pendency of the action.

By an order to show cause signed by Supreme Court on November 8, 2006, Laurus, which was seeking to sell the premises, moved to cancel the notice of pendency on the ground that "[p]laintiff ha[d] no interest that affects the [premises]," i.e., had no cause of action against Laurus. Immediately after moving to cancel the notice of pendency, Laurus moved to dismiss the complaint as against it. Plaintiff opposed both motions. In separate orders, Supreme Court denied both motions, and this consolidated appeal ensued.

"In cases where the court has considered extrinsic evidence on a CPLR 3211 motion, the allegations are not deemed true. The motion should be granted where the essential facts have been negated beyond substantial question by the affidavits and evidentiary matter submitted. Allegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence, are not presumed to be true and accorded every favorable inference" (*Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 80-81 [1999] [internal quotation marks, citations, ellipsis and brackets omitted], *affd* 94 NY2d 659 [2000]; *see Maas v Cornell Univ.*, 94 NY2d 87, 91 [1999]; *Morgenthow & Latham v Bank of N.Y. Co.*, 305 AD2d 74, 78 [2003]). Concomitantly, where extrinsic evidence is used, the standard of review on a CPLR 3211 (a) (7) motion is "whether the proponent of the pleading has a cause of action, not whether he has stated one" (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). Here, essential facts alleged in the complaint regarding plaintiff's claim for an

equitable lien have been negated beyond substantial question by the extrinsic evidence on this motion.

To establish an equitable lien, "plaintiff must show a particular agreement by defendant to confer a security interest in the property at issue. Plaintiff's mere expectation of payment, however sincere, is insufficient to establish an equitable lien" (*Security Pac. Mtge. & Real Estate Servs., Inc. v Republic of Philippines*, 962 F2d 204, 209 [2d Cir 1992] [internal quotation marks, citations and brackets omitted]; *see Teichman v Community Hosp. of W. Suffolk*, 87 NY2d 514, 520 [1996]).

Newman, the attorney who acted as the escrow agent for PHI and P.H. Realty, averred that nonparty 21st Century Technologies (21st Century) wired Newman over $1,000,000 between January and February 2004. 21st Century's president, Dunn, represented to Newman that all of the funds came from 21st Century. Dunn instructed Newman that the funds were to be loaned to PHI, and that a second mortgage on the premises in favor of *21st Century*, subordinate to the mortgage of Laurus, should serve as security for the loan. A letter on 21st Century's letterhead, dated February 20, 2004, from Dunn to Newman confirms Newman's assertions that Dunn represented that all of the funds transferred by 21st Century to Newman came from 21st Century, and that the second mortgage was to be in favor of 21st Century. Moreover, Newman expressly averred that he was not aware of plaintiff prior to the consummation of the loan transactions between PHI, Laurus and 21st Century.

According to Newman, he released the funds to PHI around the date the agreements were entered into between PHI and Laurus, but did not obtain a second mortgage in favor of 21st Century because the agreements between PHI and Laurus prohibited additional encumbrances on the premises. The various agreements between PHI and Laurus, dated February 23, 2004, corroborate Newman's affidavit. Pursuant to those agreements, PHI warranted that the premises were and would remain free of liens, security interests and other encumbrances, except those expressly permitted by the agreements. A breach by PHI of the provisions proscribing liens, security interests and other encumbrances would have constituted a default under the agreements, entitling Laurus to accelerate repayment of the note, a default rate of interest and foreclosure.

The conclusory allegations in the complaint to the effect that there was an agreement between PHI or P.H. Realty and plaintiff that PHI or P.H. Realty would confer upon plaintiff a security interest in the premises are flatly contradicted and negated beyond substantial question by the extrinsic evidence on

the motion. Specifically, Newman's affidavit, the February 20, 2004 letter, the mortgage, security agreement and mortgage consolidation agreement between PHI and Laurus demonstrate that neither PHI nor P.H. Realty agreed to confer a security interest in the premises to anyone other than Laurus.[2] Moreover, even assuming PHI or P.H. Realty did agree to confer a security interest in the premises based on the loan from the funds released to PHI by Newman, plaintiff was not the party who would be entitled to such an interest. Rather, as Newman's affidavit and the February 20, 2004 letter make plain, 21st Century sought the security interest.

None of plaintiff's submissions in opposition to the motion to dismiss rehabilitated the conclusory allegations in the complaint that were flatly contradicted by the other extrinsic evidence. The affidavit of Brent Romney, an investor in plaintiff, indicates nothing more than that plaintiff loaned PHI or P.H. Realty $490,000. The affidavit does not support plaintiff's allegations that PHI or P.H. Realty agreed to provide plaintiff with a security interest in the premises.

Kevin Romney, another investor in plaintiff, averred that in February 2004 he had a telephone conversation with an agent of PHI and P.H. Realty and an unidentified official of Laurus. Kevin Romney stated that:

"4. During that conversation, [he] asked the official [from Laurus] if [the official] understood that [plaintiff] would be making a short-term loan to P.H. Realty to allow [it] to acquire the Property. During the conversation, it was understood that [plaintiff]'s short-term loan was to have security in the form of collateral on the Property.

"5. [He] also asked the official if he could confirm that Laurus was to provide some type of funding with respect to P.H. Realty's acquisition of the Property, which funding would include full payment of the short-term . . . purchase money loan [that plaintiff was providing]. That official responded, 'That's what our intent is.'

"6. Thus, in February 2004, prior to [plaintiff] making any purchase money loan to P.H. Realty, Laurus was fully aware that [plaintiff] was making a short-term purchase money loan

---

**2.** In addition to being flatly contradicted by the extrinsic evidence, plaintiff's allegation that PHI or P.H. Realty granted plaintiff a lien on the premises is inherently incredible (*see generally Fernicola v New York State Ins. Fund*, 293 AD2d 844 [2002]). After all, in the event that PHI or P.H. Realty permitted such a lien on the premises, they would have defaulted under the February 2004 agreements, and placed at risk $24 million in funding for a $490,000 loan.

to P.H. Realty, that such loan was to be used by P.H. Realty to acquire the Property, and further that [plaintiff] was to receive some sort of collateralized security on the Property in exchange for that loan."

Notably, the vague assertion in paragraph 4 (cast in the passive voice, to boot), that "it was understood" that plaintiff was to have a security interest, is not supported by any allegations identifying what was said and by whom, or otherwise establishing this understanding. Indeed, for all that appears in the affidavit, the alleged "underst[anding]" may have been Kevin Romney's unilateral understanding. Nowhere in the affidavit, after all, does he assert that the Laurus representative said *anything* that evidenced a bilateral understanding.

Putting aside these infirmities of the averments, they fail to demonstrate "a *clear* intent between the parties that [the premises] be held [or] given . . . as security for [the loan]" (*Liselli v Liselli*, 263 AD2d 468, 469 [1999] [emphasis added], *lv denied* 94 NY2d 751 [1999], quoting *Datlof v Turetsky*, 111 AD2d 364, 365 [1985]; *see Miller v Marchuska*, 31 AD3d 949, 951 [2006] [specific property must be given to secure loan]). Rather, these averments indicate nothing more than an agreement to pay a debt out of a designated fund, which does not operate to create an equitable lien (*Datlof*, 111 AD2d at 365, citing *James v Alderton Dock Yards*, 256 NY 298, 303 [1931]).

At bottom, plaintiff had nothing more than an expectation that the loan it advanced to PHI or P.H. Realty would be repaid. That expectation is insufficient to support a claim for an equitable lien (*see Scivoletti v Marsala*, 61 NY2d 806, 809 [1984]). Because plaintiff does not have a claim for an equitable lien (*see generally Guggenheimer*, 43 NY2d at 275), that aspect of Laurus' motion seeking dismissal of that claim should have been granted. Moreover, since plaintiff does not have a claim against Laurus for an equitable lien, the very claim upon which plaintiff's filing of the notice of pendency was predicated (*see* CPLR 6501), the notice of pendency should be cancelled (*see Liselli*, 263 AD2d at 469; *Borrero v East Harlem Council for Human Servs.*, 165 AD2d 807 [1990]).

I agree with the majority for the reasons it provides that plaintiff's cause of action for unjust enrichment should be dismissed as against Laurus. Accordingly, for the reasons stated above, I would reverse the orders appealed, grant both motions, dismiss the complaint as against Laurus and cancel the notice of pendency.

■ ARI KRAMER, as Administrator of the Estate of IRVING T. BUSH, Deceased, and as Executor of VIRGINIA CASEY BUSH,