[903 NE2d 1167, 875 NYS2d 846]

PAULA FASSO et al., Respondents, and INDEPENDENT HEALTH ASSOCIATION, INC., Intervenor-Appellant, v RALPH J. DOERR, M.D., Respondent.

Argued January 15, 2009; decided February 24, 2009

## POINTS OF COUNSEL

*McGee & Gelman,* Buffalo (*Michael R. McGee* of counsel), for intervenor-appellant. I. A subrogor cannot control, cancel, destroy or otherwise prejudice an equitable subrogation claim of a subrogee. (*Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.,* 240 NY 37; *North Star Reins. Corp. v Continental Ins. Co.,* 82 NY2d 281; *ELRAC, Inc. v Ward,* 96 NY2d 58; *Federal Ins. Co. v Arthur Andersen & Co.,* 75 NY2d 366; *Sisson v Hassett,* 155 Misc 667; *Allstate Ins. Co. v Stein,* 1 NY3d 416; *Allstate Ins. Co. v Mazzola,* 175 F3d 255; *Humbach v Goldstein,* 229 AD2d 64; *Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.,* 3 NY3d 200.) II. Contrary to the public policy set forth by this Court, the Appellate Division's decision virtually eliminates equitable subrogation claims. (*North Star Reins. Corp. v Continental Ins. Co.,* 82 NY2d 281; *Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.,* 240 NY 37; *Winkelmann v Excelsior Ins. Co.,* 85 NY2d 577; *Teichman v Community Hosp. of W. Suf-*

*folk,* 87 NY2d 514; *Allstate Ins. Co. v Mazzola,* 175 F3d 255; *Primax Recoveries Inc. v Carey,* 247 F Supp 2d 337; *Blue Cross & Blue Shield of N.J., Inc. v Philip Morris, Inc.,* 113 F Supp 2d 345; *Allstate Ins. Co. v Stein,* 1 NY3d 416.) III. The make whole rule is a priority of recovery rule, not an element of an equitable subrogation cause of action. (*Winkelmann v Excelsior Ins. Co.,* 85 NY2d 577; *Harding v Onibokun,* 14 Misc 3d 790; *Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.,* 240 NY 37.) IV. Equitable subrogation does not prejudice the rights of the subrogor. (*Winkelmann v Excelsior Ins. Co.,* 85 NY2d 577.) V. A tortfeasor does not have standing to assert the make whole rule. (*Allstate Ins. Co. v Mazzola,* 175 F3d 255; *Federal Ins. Co. v Arthur Andersen & Co.,* 75 NY2d 366.) VI. The trial court's denial of Independent Health Association, Inc.'s motion for a mistrial was an abuse of discretion. VII. The IAS court did not have the authority to dismiss Independent Health Association, Inc.'s complaint sua sponte. (*Blunt v Northern Oneida County Landfill [NOCO],* 145 AD2d 913; *Myung Chun v North Am. Mtge. Co.,* 285 AD2d 42; *Balogh v H.R.B. Caterers,* 88 AD2d 136; *Gibbs v Kinsey,* 120 AD2d 701; *Hoeffner v John F. Frank, Inc.,* 302 AD2d 428; *Fischer v Mead Johnson Labs.,* 41 AD2d 737; *Sena v Nationwide Mut. Fire Ins. Co.,* 198 AD2d 345; *Guggenheimer v Ginzburg,* 43 NY2d 268.)

*Lipsitz Green Scime Cambria LLP,* Buffalo (*John A. Collins* of counsel), for Paula Fasso and another, respondents. I. Independent Health Association, Inc.'s equitable subrogation claim is barred by the "make whole rule," as applied in light of the insurer's obligation to do nothing that would prejudice Paula and Michael Fasso's substantial rights. (*Teichman v Community Hosp. of W. Suffolk,* 87 NY2d 514; *Winkelmann v Excelsior Ins. Co.,* 85 NY2d 577; *Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.,* 240 NY 37; *Oakes v Patel,* 23 AD3d 1023; *Kaczmarski v Suddaby,* 9 AD3d 847, 3 NY3d 738; *Omiatek v Marine Midland Bank, N.A.,* 9 AD3d 831, 3 NY3d 738; *ELRAC, Inc. v Ward,* 96 NY2d 58; *USF&G v Maggiore,* 299 AD2d 341; *Jefferson Ins. Co. of N.Y. v Travelers Indem. Co.,* 92 NY2d 363.) II. Given Independent Health Association, Inc.'s election to participate in this action as a passive intervenor, it was not entitled to a mistrial when plaintiffs settled their action. (*Matter of Bales,* 93 AD2d 861, 60 NY2d 554; *Matter of Sakow,* 21 AD3d 849, 7 NY3d 706; *Matter of Mott v Ransom,* 210 AD2d 929; *Town of Orangetown v Magee,* 88 NY2d 41; *Freidus v Eisenberg,* 71 NY2d 981; *T. W. Oil v Consolidated Edison Co. of N.Y.,* 57 NY2d 574; *Spodek v Lasser Stables,* 89 AD2d 892; *Pugliese v D'Estrada,*

259 AD2d 743; *Scarola v St. Vincent's Med. Ctr. of Richmond,* 154 AD2d 364; *Allstate Ins. Co. v Stein,* 1 NY3d 416.) III. The trial court properly dismissed Independent Health Association, Inc.'s complaint in intervention. (*Blunt v Northern Oneida County Landfill [NOCO],* 145 AD2d 913; *Balogh v H.R.B. Caterers,* 88 AD2d 136.) IV. The Court of Appeals should bar health carriers' intervention in their insureds' personal injury actions. (*Oakes v Patel,* 23 AD3d 1023; *Kaczmarski v Suddaby,* 9 AD3d 847, 3 NY3d 738; *Omiatek v Marine Midland Bank, N.A.,* 9 AD3d 831, 3 NY3d 738; *Humbach v Goldstein,* 229 AD2d 64, 91 NY2d 921; *Berry v St. Peter's Hosp. of City of Albany,* 250 AD2d 63; *Halloran v Don's 47 W. 44th St. Rest. Corp.,* 255 AD2d 206; *Marshall v 426-428 W. 46th St. Owners, Inc.,* 33 AD3d 444; *Winkelmann v Excelsior Ins. Co.,* 85 NY2d 577.)

*Roach, Brown, McCarthy & Gruber, P.C.,* Buffalo (*Joseph V. McCarthy* and *Elizabeth G. Adymy* of counsel), for Ralph J. Doerr, M.D., respondent. I. The Fourth Department's order is consistent with the governing principles of law. (*Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.,* 240 NY 37; *Federal Ins. Co. v Arthur Andersen & Co.,* 75 NY2d 366; *ELRAC, Inc. v Ward,* 96 NY2d 58; *Allstate Ins. Co. v Stein,* 1 NY3d 416; *Winkelmann v Excelsior Ins. Co.,* 85 NY2d 577; *USF&G v Maggiore,* 299 AD2d 341; *Berry v St. Peter's Hosp. of City of Albany,* 250 AD2d 63; *Humbach v Goldstein,* 229 AD2d 64; *Omiatek v Marine Midland Bank, N.A.,* 9 AD3d 831.) II. Independent Health Association, Inc.'s interpretation of the "make whole" rule and its application to this case is unsupported and unavailing. (*Avraham v Allied Realty Corp.,* 8 AD3d 1079; *Killeen v Crosson,* 284 AD2d 926; *Matter of Van Wormer v Leversee,* 87 AD2d 942; *Federal Ins. Co. v Arthur Andersen & Co.,* 75 NY2d 366; *Winkelmann v Excelsior Ins. Co.,* 85 NY2d 577; *Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.,* 3 NY3d 200.) III. The dismissal of the intervenor's complaint was upon motion by Ralph Doerr, M.D. (*Gibbs v Kinsey,* 120 AD2d 701.)

*Law Offices of Michael A. Haskel,* Mineola (*Michael A. Haskel, Miranda W. Turner* and *Brandon W. Zlotnick* of counsel), for Medical Society of the State of New York, amicus curiae. I. The public interest will be adversely affected by any adoption of Independent Health Association, Inc.'s position. (*Humbach v Goldstein,* 229 AD2d 64, 91 NY2d 921; *Berry v St. Peter's Hosp. of City of Albany,* 250 AD2d 63; *Teichman v Community Hosp. of W. Suffolk,* 87 NY2d 514; *Oden v Chemung County Indus. Dev. Agency,* 87 NY2d 81; *Kaczmarski v Suddaby,* 9 AD3d 847; *En-*

*right v Eli Lilly & Co.,* 77 NY2d 377; *Bryant v New York City Health & Hosps. Corp.,* 93 NY2d 592.) II. Independent Health Association, Inc.'s position is inequitable. (*Humbach v Goldstein,* 229 AD2d 64; *Kaczmarski v Suddaby,* 9 AD3d 847.) III. Independent Health Association, Inc.'s position violates the "make whole rule." (*Winkelmann v Excelsior Ins. Co.,* 85 NY2d 577; *Federal Ins. Co. v Arthur Andersen & Co.,* 75 NY2d 366; *Teichman v Community Hosp. of W. Suffolk,* 87 NY2d 514; *Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.,* 240 NY 37; *G. B. Seely's Son v Fulton-Edison,* 52 AD2d 575.) IV. Independent Health Association, Inc. should not have been permitted to intervene. (*Winkelmann v Excelsior Ins. Co.,* 85 NY2d 577; *Federal Ins. Co. v Arthur Andersen & Co.,* 75 NY2d 366; *Dombroski v Samaritan Hosp.,* 47 AD3d 80; *Kaczmarski v Suddaby,* 9 AD3d 847; *Allstate Ins. Co. v Stein,* 1 NY3d 416; *Teichman v Community Hosp. of W. Suffolk,* 87 NY2d 514.)

*Greenberg Traurig, LLP,* Albany (*Harold N. Iselin* and *Stephen M. Buhr* of counsel), for New York Health Plan Association, Inc., amicus curiae. I. This Court should reverse the decision of the court below. (*Federal Ins. Co. v Arthur Andersen & Co.,* 75 NY2d 366; *ELRAC, Inc. v Ward,* 96 NY2d 58; *Pennsylvania Gen. Ins. Co. v Austin Powder Co.,* 68 NY2d 465; *Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.,* 240 NY 37; *Teichman v Community Hosp. of W. Suffolk,* 87 NY2d 514; *Blue Cross & Blue Shield of N.J., Inc. v Philip Morris, Inc.,* 113 F Supp 2d 345; *Winkelmann v Excelsior Ins. Co.,* 85 NY2d 577; *Berry v St. Peter's Hosp. of City of Albany,* 173 Misc 2d 214, 250 AD2d 63; *Nossoughi v Federated Dept. Stores,* 175 Misc 2d 585.) II. The question of whether to eliminate the right of health plans to pursue equitable subrogation is more appropriately addressed by the Legislature rather than this Court. (*Teichman v Community Hosp. of W. Suffolk,* 87 NY2d 514.)

**OPINION OF THE COURT**

GRAFFEO, J.

When a person suffers personal injuries because of the wrongdoing of another and the injured party's health insurer pays for medical treatment, a cause of action for equitable subrogation accrues to the health insurer, allowing the insurer to seek recoupment of its expenditures. The issue before us is whether the injured party and the tortfeasor can agree to a settlement that extinguishes the insurer's subrogation rights. We conclude that the subrogation claim in this case cannot be discontinued without the subrogee's consent.

I

Plaintiff Paula Fasso received medical services from defendant Ralph Doerr, M.D., in 1996. She subsequently developed complications that required her to undergo a liver transplant. Approximately two years later, Mrs. Fasso and her husband commenced this action against Dr. Doerr and the hospital where he treated her, alleging that Dr. Doerr had committed medical malpractice. Mrs. Fasso required a second liver transplant in 2003, resulting in her medical and surgical expenses totaling approximately $780,000, all of which were paid by her health insurance carrier, Independent Health Association, Inc. (IHA).

In 2005, IHA moved to intervene in the Fassos' medical malpractice action pursuant to CPLR 1013 in order to assert an equitable subrogation claim against Dr. Doerr for reimbursement of the payments made on Mrs. Fasso's behalf.[1] IHA represented that it would "not unduly delay" the litigation or "prejudice the substantial rights of any party" if permitted to intervene.[2] Neither plaintiffs nor defendants opposed IHA's motion and Supreme Court therefore allowed IHA to become a party to the case.

The Fassos eventually sought summary judgment dismissing IHA's complaint for equitable subrogation. They contended that IHA could not expect to receive reimbursement from Dr. Doerr because Mrs. Fasso's damages exceeded the $2 million of malpractice coverage available to Dr. Doerr. Hence, the Fassos claimed that Mrs. Fasso could not be "made whole" in light of the coverage limits of the doctor's malprac-

---

**1.** IHA could have instituted its own action directly against Dr. Doerr, but by the time it became involved in this case, the statute of limitations had run. Instead, IHA decided to request intervention on the basis that an "intervenor's claim will be deemed to have been interposed as of the filing date of the petition . . . if the proposed intervenor's claim and that of the original petitioner are based on the same transaction or occurrence" and "the proposed intervenor and the original petitioner [are] so closely related that the original petitioner's claim would have given the respondent notice of the proposed intervenor's specific claim so that the imposition of the additional claim would not prejudice the respondent" (*Matter of Greater N.Y. Health Care Facilities Assn. v DeBuono*, 91 NY2d 716, 720-721 [1998]). If intervention had not been available, IHA's remedy would have been to seek reimbursement from any portion of the Fassos' recovery that was attributable to the medical expenses paid by IHA.

**2.** IHA's representations mirrored the language of the permissible intervention statute, CPLR 1013.

tice policies. Supreme Court denied the Fassos' motion to dismiss IHA's complaint.[3]

Before the trial began, IHA informed Supreme Court that it would rely on the Fassos' proof of Dr. Doerr's alleged negligence and would present only one witness to establish the medical expenses. Mrs. Fasso was the first witness to testify and, the following morning, the attorneys for plaintiffs and the doctor advised the court that a settlement had been reached. Under the terms of the agreement, plaintiffs would receive $900,000, Dr. Doerr would not admit wrongdoing and IHA's equitable subrogation claim would be dismissed on the basis that Mrs. Fasso was not "made whole" since the settlement payment was less than her actual damages. IHA, which had not participated in the negotiations or agreed to the dismissal of its cause of action against Dr. Doerr, did not object to plaintiffs receiving the monetary payment. But it did contest the dismissal of its equitable subrogation claim because, after Dr. Doerr paid the $900,000 settlement, there remained $1.1 million in potential insurance coverage—an amount greater than the sum IHA sought in subrogation. IHA also moved for a mistrial so that it could obtain its own witnesses and evidence to prove Dr. Doerr's negligence.

Supreme Court denied IHA's request for a mistrial and approved the settlement between the Fassos and Dr. Doerr. Since Mrs. Fasso was not being paid the full amount of her damages, the court held that IHA's subrogation claim could not survive and sua sponte dismissed IHA's complaint. The Appellate Division affirmed (46 AD3d 1358 [2007]). We granted leave (10 NY3d 707 [2008]) and now reverse.

II

It is well established that when an insurer pays for losses sustained by its insured that were occasioned by a wrongdoer, the insurer is entitled to seek recovery of the monies it expended under the doctrine of equitable subrogation (see e.g. Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc., 3 NY3d 200, 206 [2004]; Winkelmann v Excelsior Ins. Co., 85 NY2d 577, 581 [1995]; Federal Ins. Co. v Arthur Andersen & Co., 75 NY2d 366, 372 [1990]; Connecticut Fire Ins. Co. v Erie Ry. Co., 73 NY

---

3. Supreme Court also granted the hospital's motion for summary judgment and the Fassos discontinued their action against the hospital.

399, 402 [1878]).[4] Equitable subrogation is premised on two related concepts. First, that the party who causes injury or damage should be required to bear the loss by reimbursing the insurer for payments made on behalf of the injured party. Second, that the injured party should not recover twice for the same harm—once from its insurer and again from the wrongdoer (*see Winkelmann v Excelsior Ins. Co.*, 85 NY2d at 581). Therefore, if an injured party receives monies from the tortfeasor attributable to expenses that were paid by its insurer, the insurer may recoup its disbursements from its insured; but when the wrongdoer does not pay damages for an insured's medical expenses, generally the insurer, as subrogee, has been allowed to seek recovery directly from the tortfeasor (*see e.g. Teichman v Community Hosp. of W. Suffolk*, 87 NY2d 514, 521-523 [1996]).

There is, however, an important limitation on recovery under the doctrine of equitable subrogation. If ''the sources of recovery ultimately available are inadequate to fully compensate the insured for its losses, then the insurer—who has been paid by the insured to assume the risk of loss—has no right to share in the proceeds of the insured's recovery from the tortfeasor'' (*Winkelmann*, 85 NY2d at 581). In other words, the insurer may seek subrogation against only those funds and assets that remain after the insured has been compensated. This designation of priority interests—referred to as the ''made whole'' rule—assures that the injured party's claim against the tortfeasor takes precedence over the subrogation rights of the insurer.

■ The Fassos and Dr. Doerr contend that the ''made whole'' rule precludes IHA from pursuing equitable subrogation against the doctor in this case because plaintiffs settled for less than the total damages caused by Dr. Doerr's alleged negligence. This position misconstrues the made whole principle. If the recovery the injured party receives, whether determined by settlement or verdict, is greater than the wrongdoer's assets and available insurance coverage, there is nothing left for the insurer to execute its subrogation rights against and the made whole rule prevents the insurer from sharing in the insured's judgment or recovery. But that is not the situation here. In this case, the made whole doctrine does not present an obstacle to the insurer's right to seek recoupment from the tortfeasor because the settlement be-

---

4. There is also a contract-based theory of subrogation but that is not at issue in this appeal.

tween the Fassos and Dr. Doerr left a potential source of recovery—$1.1 million in remaining insurance coverage. Consequently, the made whole rule did not mandate dismissal of IHA's equitable subrogation claim merely because the Fassos decided to accept a settlement figure that did not completely compensate them for the full extent of their damages.

The Fassos and Dr. Doerr alternatively maintain that their agreement to extinguish IHA's equitable subrogation cause of action is binding on IHA because an insurer stands in the shoes of its insured and acquires only those rights that the insured possesses. This argument misapprehends the nature of the equitable subrogation doctrine. The right to subrogation "accrue[s] upon payment of the loss" by the insurer (*Federal Ins. Co. v Arthur Andersen & Co.*, 75 NY2d at 372) and it generally cannot be imperiled by the insured (*see e.g. Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.*, 240 NY 37, 50 [1925]; *Aetna Cas. & Sur. Co. v Bekins Van Lines Co.*, 67 NY2d 901, 903 [1986]). Once an insurer has paid a claim and the tortfeasor knows or should have known that a right to subrogation exists, the wrongdoer and the insured cannot agree to terminate the insurer's claim without its consent and such an agreement cannot be asserted as a defense to the insurer's cause of action (*see Ocean Acc. & Guar. Corp.*, 240 NY at 50-51; *see generally Connecticut Fire Ins. Co. v Erie Ry. Co.*, 73 NY at 402-403; *cf. Weinberg v Transamerica Ins. Co.*, 62 NY2d 379, 384, 384 n 4 [1984]).[5] Hence, the provision of the settlement between the Fassos and Dr. Doerr that purported to bar IHA's equitable subrogation claim cannot be enforced and does not prevent IHA from

---

5. There is a wealth of precedent supporting this rule (*see e.g. Allstate Ins. Co. v Mazzola*, 175 F3d 255, 260-261 [2d Cir 1999]; *Allied Mut. Ins. Co. v Heiken*, 675 NW2d 820, 828-829 [Iowa 2004]; *Primax Recoveries Inc. v Carey*, 247 F Supp 2d 337, 345 [SD NY 2002]; *State Farm Fire & Cas. Co. v Pacific Rent-All, Inc.*, 90 Haw 315, 330, 978 P2d 753, 768 [1999]; *Westchester Fire Ins. v Heddington Ins. Ltd.*, 883 F Supp 158, 162 [SD Tex 1995], *affd* 84 F3d 432 [5th Cir 1996]; *National Ins. Underwriters v Piper Aircraft Corp.*, 595 F2d 546, 551 [10th Cir 1979]; *Sentry Ins. Co. v Stuart*, 246 Ark 680, 685-686, 439 SW2d 797, 799-800 [1969]; *Home Ins. Co. v Hertz Corp.*, 71 Ill 2d 210, 214-215, 375 NE2d 115, 118 [1978]; *Nationwide Mut. Ins. Co. v Canada Dry Bottling Co.*, 268 NC 503, 507-508, 151 SE2d 14, 17 [1966]; *Aetna Cas. & Sur. Co. v Associates Transps., Inc.*, 512 P2d 137, 142, 1973 OK 62 [1973]; *Hospital Serv. Corp. of R.I. v Pennsylvania Ins. Co.*, 101 RI 708, 718, 227 A2d 105, 112 [1967]; *Calvert Fire Ins. Co. v James*, 236 SC 431, 439, 114 SE2d 832, 836-837 [1960]; Buckner, Annotation, *Rights and Remedies of Property Insurer as Against Third-Person Tortfeasor Who Has Settled With Insured*, 92 ALR2d 102 [collecting authorities]; 16 Couch on Insurance 3d § 224:179, at 224-203; Windt, 1 Insurance Claims and Disputes 5th § 3:7 n 9 [collecting authorities]).

proceeding to obtain reimbursement from Dr. Doerr for the payments it made for Mrs. Fasso's medical expenses as a result of the doctor's alleged negligence.[6] We therefore reverse and remit to Supreme Court for further proceedings.[7]

### III

Although we conclude that plaintiffs could not extinguish IHA's equitable subrogation cause of action without its consent, we find it necessary to comment on the procedural posture of this case. CPLR 1013 allows a party to request permission to intervene in a civil proceeding "when the person's claim or defense and the main action have a common question of law or fact." In exercising its discretion to grant or deny intervention, a trial court must "consider whether the intervention will unduly delay the determination of the action or prejudice the substantial rights of any party" (*id.*).

New York courts have disagreed on the issue of whether it is permissible to grant intervention to health insurers of injured parties in tort cases. The predominant view is that the participation by insurers in settlement negotiations creates conflicts of interest with plaintiffs, who may wish to accept settlements that do not allocate sufficient monies to cover all or part of the medical expenses, and discourages or prevents settlements since insurers will be inclined to object to anything less than full recovery of their expenditures (*see Berry v St. Peter's Hosp. of City of Albany*, 250 AD2d 63 [3d Dept 1998, Carpinello, J.], *lv dismissed* 92 NY2d 1045 [1999]; *see also Marshall v 426-428 W. 46th St. Owners, Inc.*, 33 AD3d 444 [1st Dept 2006]; *Humbach v Goldstein*, 229 AD2d 64 [2d Dept 1997], *lv dismissed* 91 NY2d 921 [1998]). Taking a contrary view, the Fourth Department has permitted discretionary intervention (*see e.g. Oakes v Patel*, 23 AD3d 1023 [4th Dept 2005]; *Omiatek v Marine Midland Bank, N.A.*, 9 AD3d 831 [4th Dept 2004], *lv dismissed* 3 NY3d 738 [2004]).

Clearly, intervention can create an adversarial posture between a plaintiff/insured and its insurer because neither has an incentive to consider the interests of the other, especially where

---

**6.** We also do not find merit to the alternative contention that IHA's assertions in its motion to intervene gave the Fassos permission to waive the equitable subrogation cause of action.

**7.** In light of this conclusion, IHA's argument that Supreme Court erred in dismissing the equitable subrogation cause of action sua sponte is academic.

the potential damages exceed the available sources of recovery (*see generally* Siegel, NY Prac § 180, at 309-310 [4th ed]).[8] The injured party's goal is to maximize recovery without regard to whether its insurer recoups any monies it expended for the plaintiff's medical bills; the insurer's objective is to reclaim as much of the money it paid as possible regardless of whether its insured has a desire to settle the case rather than proceed to trial. Thus, allowing an insurer to intervene inevitably complicates settlement negotiations over the tortfeasor's insurance coverage.

In this case, neither the Fassos nor Dr. Doerr opposed IHA's motion to intervene under CPLR 1013 so the issue of whether intervention was properly granted to IHA is not before us. We note, however, that the question of permissive intervention raises competing policy concerns that are deserving of legislative consideration. Certainly, plaintiffs and defendants need to weigh the benefits and detriments of settlement offers with knowledge of the consequences. But in light of spiraling health care costs and their effect on the availability and affordability of medical insurance, "[h]ealth insurers in this state have increasingly invoked the subrogation doctrine in an effort to protect limited plan assets" (Hourihan and Zeitounzian, *The Prognosis for Recovery: Health Insurance Subrogation*, 80 NY St BJ 22, 22 [May 2008]). As a result, there has emerged an uncertainty regarding how and when health insurers should assert their subrogation claims.

The Legislature considered some of these issues when it codified CPLR 4545, which deals with the collateral source rule. That statute provides that a verdict that includes past medical expenses should be reduced by the amounts paid by an insurer for the plaintiff's medical treatments (*see* CPLR 4545)—to avoid double recovery by a plaintiff—but the Legislature did not address the procedures and means of recovery for the equitable subrogation rights of insurers. Moreover, the collateral source doctrine applies only to verdicts, not settlements, and nothing in the language or legislative history of CPLR 4545 indicates that the Legislature intended to alter the established rules of equitable subrogation. Consequently, the Legislature may wish to reexamine the concept of permissible intervention under

---

**8.** Another problem relates to the burden of litigation expenses. When an insurer is allowed to intervene, it usually remains in the background of the case, imposing on the insured the duty and cost of proving the defendant's wrongdoing.

CPLR 1013 as it applies to personal injury actions involving a health insurer's claim of equitable subrogation.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion.

Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Order reversed, etc.