OPINION OF THE COURT
Diane L. Fitzpatrick, J.
Movant Excellus Health Plan, Inc., brings a motion seeking permission to intervene in this pending claim[1] pursuant to CPLR 1012 and 1013. Claimant has not responded to the motion, however, defendant opposes movant’s intervention.
The claim seeks damages for injuries Joanne Rink sustained on June 6, 2007 while she was a patient at the State University of New York Upstate Medical University Hospital (hereinafter University Hospital) as a result of a motor vehicle accident on June 2, 2007. It is alleged as follows: In the early morning of June 6, 2007 Mrs. Rink allegedly began to suffer from paranoia and became agitated. At some point in time that day Mrs. Rink exhibited very aggressive behavior and paranoid thoughts, had some medication administered, and then she was placed in restraints. After being placed in the restraints, Mrs. Rink was left alone, she got out of her restraints, and went out a window in her room falling to the concrete many feet below. Mrs. Rink suffered significant injuries and was in a coma for an extended period before she died.
The claim seeks damages for medical malpractice and negligence. Claimant Mr. Rink also sets forth a cause of action for loss of consortium. The claim was filed on August 24, 2007. Defendant interposed a verified answer on October 3, 2007.
Mrs. Rink had health insurance coverage under a subscriber agreement between herself, Mr. Rink, and movant. Pursuant to that health insurance contract, movant asserts that it has paid out $174,256.32 for Joanne Rink’s medical expenses. Movant, by this motion, seeks to intervene in this pending action to seek reimbursement from the alleged wrongdoer for the expenditures *1161 for Mrs. Rink’s medical expenses. Movant has tailored its motion request to the requirements of CPLR 1013 arguing that there are common questions of law or fact and intervention will not duly delay the action or prejudice the rights of any party.
Defendant, in opposition, makes several arguments. First, defendant argues that movant’s motion is untimely, pursuant to the Court of Claims Act and the statute of limitations, which should preclude intervention. Defendant asserts that this is a separate action for reimbursement which exposes the State to damages for which it would have otherwise had an offset pursuant to CPLR 4545.[2] Although the insurance contract authorizes reimbursement, defendant argues that only post-action relief is contemplated. Under the contract, subrogation is only authorized where the insured fails to take necessary legal action to recover from the responsible party, which is not the case here, as claimant has already sought to recoup medical expenses as part of the demand for damages. Defendant also argues that public policy demands that the motion be denied, as the amounts expended are precisely the business risks movant assumed in entering into the contract, and it should not be permitted to seek reimbursement for those expenditures.
CPLR 1012 authorizes intervention as of right when (1) a statute confers an absolute right to intervene, or (2) when representation of the person’s interest by the parties is or may be inadequate and the person will be bound by the judgment, or (3) when the action involves the disposition or distribution of the title or a claim for damages for injury to property and the person may be adversely affected by the judgment. CPLR 1013 authorizes intervention by permission when a statute confers a right to intervene or when a person’s claim or defense and the main action have common questions of law or fact. The court has discretion to grant the requested relief, even under CPLR 1012, to insure that intervention will not prejudice the rights of any existing party (see Berry v St. Peter’s Hosp. of City of Albany, 250 AD2d 63, 69 [1998]).
Movant asserts that its right of subrogation arises both from the contract between it and its insured and principals of equity. Movant has attached a copy of its contractual provision with its insured authorizing subrogation to its motion (see movant’s exhibit D). A close review of the contract language reflects, as de *1162 fendant argues, that movant’s contractual rights of subrogation are not ripe for enforcement — as movant’s contractual right to subrogation arise when the “Covered Person”[3] “recovers similar medical expenses for the same injury or illness from the third party or the third party’s insurer.” This has not occurred. The contract reserves movant’s right to bring an independent action against the responsible party in the name of the insured if the covered person fails to take necessary legal action to recover from the responsible party. Here, claimant has made a demand for medical expenses and the statute of limitations for such action has expired (see Allstate Ins. Co. v Stein, 1 NY3d 416 [2004]; Liberty Mut. Ins. Co. v Clark, 296 AD2d 442, citing Matter of Nationwide Mut. Ins. Co. v Motor Veh. Acc. Indent. Corp., 190 AD2d 798, 800 [1993] [since the nature of a subrogation action is derivative of the underlying tort, it accrues from the date of the underlying accident or incident and not from the date of payment]). As a result, at this juncture, movant is really asserting a right of equitable subrogation.
Equitable subrogation is based upon the premise that a person who pays a debt that is owed by another should be allowed the opportunity to be reimbursed in full by the one primarily responsible for the losses (see Chemical Bank v Meltzer, 93 NY2d 296, 304 [1999]). The right to equitable subrogation arises when the insurer makes payment on behalf of the insured (see Teichman v Community Hosp. of W. Suffolk, 87 NY2d 514 [1996]; North Star Reins. Corp. v Continental Ins. Co., 82 NY2d 281, 294 [1993]; Winkelmann v Excelsior Ins. Co., 85 NY2d 577 [1995]). Subrogation allows an insurance company to stand in the shoes of its insured and seek reimbursement from the one who caused the loss, as long as the insured’s rights are not compromised (see Winkelmann v Excelsior Ins. Co., 85 NY2d 577 [1995]). An insurance company’s right to pursue equitable subrogation is well established (see Fasso v Doerr, 12 NY3d 80, 88 [2009]; Winkelmann v Excelsior Ins. Co., 85 NY2d 577 [1995]; Federal Ins. Co. v Arthur Andersen & Co., 75 NY2d 366, 372 [1990]).[4]
*1163 To enforce its right of equitable subrogation, the insurer can bring an independent action against the wrongdoer in the name of its insured, the subrogor, or seek to intervene in an existing action between the insured and the wrongdoer (see Teichman v Community Hosp. of W. Suffolk, 87 NY2d 514, 521-523 [1996] [reimbursement directly from the tortfeasor]; Oakes v Patel, 23 AD3d 1023 [2005] [intervention]). The matter of the insurer intervening in pending litigation between the insured and the alleged wrongdoer has become a quagmire. Success used to be primarily dependent upon which judicial department the action was venued in, and now the issue is further complicated by newly enacted General Obligations Law § 5-335.
The First, Second, and Third Judicial Departments have denied an insurer’s right to intervene in pending litigation between its insured and the alleged wrongdoer (see Hallaran v Don’s 47 W. 44th St. Rest. Corp., 255 AD2d 206 [1st Dept 1998]; Marshall v 426-428 W. 46th St. Owners, Inc., 33 AD3d 444 [1st Dept 2006]; Humbach v Goldstein, 229 AD2d 64 [2d Dept 1997]; Berry v St. Peter’s Hosp. of City of Albany, 250 AD2d 63 [3d Dept 1998]). These judicial departments found that to allow an insurer into the pending tort litigation would create an adversarial relationship between the insurer and its insured and detrimentally complicate the litigation. The Fourth Department has contrarily held that the insurer has the right to intervene in the pending tort litigation and has rejected arguments that the insurer’s right to subrogation is foreclosed by the application of CPLR 4545 against the insured (Poblocki v Todoro, 55 AD3d 1346 [2008]; Oakes v Patel, 23 AD3d 1023 [2005]; Kctczmarski v Suddaby, 9 AD3d 847 [2004]; Omiatek v Marine Midland Bank, N.A., 9 AD3d 831 [2004]). The Court of Appeals in Fasso v Doerr (12 NY3d 80, 89-90 [2009]) did not address the issue directly, but did note that given the competing policy concerns, the issue should be addressed by the Legislature (id. at 90). In Fasso, the insured and the tortfeasor settled the tort action, and purportedly dismissed the insurer’s equitable subrogation claim on the ground that the insured had not been *1164 made whole.[5] 6 The Court of Appeals found that once a tortfeasor knows or should know of an insurer’s right to subrogation, the insured and the tortfeasor cannot extinguish the insurer’s claim without the insurer’s consent. The Court commented on the insurer’s intervention into the action, noting that “intervention can create an adversarial posture between a plaintiff/insured and its insurer . . . [and it] inevitably complicates settlement negotiations.” {Id. at 89-90.) The Court encouraged the Legislature to reexamine the concept of permissible intervention as a means for an insurer to pursue its equitable subrogation rights.
Following the Fasso v Doerr decision, legislation was passed adding a new section to the General Obligations Law, section 5-335, which provides that when a plaintiff settles with one or more defendants, it will be conclusively presumed that the settlement does not include any compensation for the cost of health care services or other economic costs to the extent that those losses or expenses have been or are obligated to be reimbursed by a benefit provider, such as an insurer, unless there is a statutory right of reimbursement.
“[N]o party entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of subrogation or reimbursement against any such settling party, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said benefit provider.” (General Obligations Law § 5-335 [a], as added by L 2009, ch 494, part F, § 8 [eff Nov. 12, 2009].)
With the enactment of this new General Obligations Law § 5-335 the question arises whether the new law affects movant’s effort to intervene as subrogor in this pending tort litigation. The statute addresses only the situation where the insured and the tortfeasor have settled the action. Where the case is settled, the insurer’s right to seek subrogation is extinguished. However, it does not address the situation where litigation is still pending. Despite a general consensus that allowing an insurer to intervene complicates the case and creates an adversarial rela *1165 tionship between the insurer and the insured, here in the Fourth Department those arguments have been rejected where the grounds for intervention have been met. The argument that allowing the insurer into the pending litigation effectively negates CPLR 4545 has also been denounced by this Department. Although General Obligations Law § 5-335 limits the intervening insurer’s right to reimbursement to a verdict or judgment, it did not extinguish its rights entirely. Accordingly, constrained by stare decisis, this court finds that where, as here, the insurer’s claim shares common questions of fact and law with the underlying tort action, and the insurer’s involvement can be contained to proof of payment of medical expenses which will not prejudice claimant in this nonjury court, movant’s motion should be granted.
Since movant failed to attach a proposed pleading with its motion, it will be bound by claimant’s claim (Lamberti v Metropolitan Transp. Auth., 170 AD2d 224 [1991]). The motion is granted to the extent that Excellus Health Plan, Inc., is permitted to intervene only to the extent of introducing evidence of the amount of medical and health expenses it has paid on behalf of Mrs. Rink as alleged by claimant’s claim and bill of particulars.

. The caption is amended sua sponte to conform with the current caption for this claim.

. CPLR 4545 authorizes a reduction from any award of damages for expenses that have been or will be reimbursed from any collateral source such as insurance.

. The provisions in the contract defining the contractual terms were not provided.

. There is, of course, an initial inquiry into whether this court has jurisdiction to hear an equitable claim as this is a court of limited jurisdiction, primarily limited to actions against the State for money damages. Yet, the Court of Claims may “apply equitable considerations and perhaps, to some extent, may grant some sort of incidental equitable relief’ when determining claims *1163 for money damages (see Psaty v Duryea, 306 NY 413, 417 [1954]; Ozanam Hall of Queens Nursing Home v State of New York, 241 AD2d 670 [1997]). Here, the movant seeks to assert primarily a claim for money damages and, therefore, it can be adjudicated in this court (see Fidelity & Deposit v State of New York, Ct Cl, July 7, 2009, Collins, J., claim No. 113357, UID No. 2009-015-177).

. The made-whole rule provides that if available sources of recovery are not sufficient to fully compensate the insured for the damages, then the insurer has no right to share in the proceeds (Fasso v Doerr, 12 NY3d 80, 87 [2009]).