OPINION OF THE COURT
Gerald E. Loehr, J.
On June 19, 2007, plaintiff commenced this action for malpractice. The Health Plan allegedly provided health insurance benefits to plaintiff since and as a consequence of the defendants’ alleged malpractice. In November 2007, the Health Plan was notified of this action. The Health Plan understood that the plaintiff would be seeking damages which included medical expenses paid by the Health Plan.[1] By April 1, 2009, discovery was complete and a trial readiness order was issued. A note of issue and certificate of readiness was served on April 2, 2010. On June 16, 2010, the Health Plan was notified that plaintiff would not be seeking as damages in this action the medical benefits that the Health Plan had provided. The Health Plan now moves to intervene as a plaintiff in order to assert its right of equitable subrogation. Defendants Joseph Yacovone, M.D., John vito L. Salerno, M.D., Radiologic Associates, EC. (collectively, Yacovone), David K. Israel, M.D., Orange Regional Medical Center (collectively, Israel), Takouhie C. Maldjian, M.D., Ugo Paolucci and Westchester County Health Care Corporation (collectively, Maldjian) have opposed the motion.[2] The plaintiff has not.
Pursuant to CPLR 1013, a person may be permitted to intervene upon a showing that their claim could be adversely affected if intervention were not allowed, that there are common questions of law and fact, and that intervention will not unduly *775 delay the action or prejudice a substantial right of any party (Teichman v Community Hosp. of W. Suffolk, 87 NY2d 514, 522 [1996]). Here, upon the granting of intervention, the Health Plan, which seeks no discovery, would present its proof of medical expenses paid upon the plaintiff’s proof of defendants’ negligence. None of the present parties indicated that they would require discovery if the application is granted. Thus, there are clearly common questions of law and fact and intervention will not delay the action (Fasso v Doerr, 12 NY3d 80, 85 [2009]). The issues to be decided are whether the Health Plan has a claim that would be adversely affected if intervention were not allowed,[3] and whether a substantial right of any party would be prejudiced if intervention were allowed.
It is well established that when an insurer pays for losses sustained by its insured that were occasioned by a wrongdoer, the insurer is entitled to seek recovery of the monies it expended under the doctrine of equitable subrogation (Fasso v Doerr, 12 NY3d 80, 86 [2009]). Equitable subrogation is premised on two related concepts. First, that the party who causes injury or damage should be required, in order to prevent unjust enrichment, to bear the loss by reimbursing the insurer for payments made on behalf of the injured party. Second, that the injured party should not recover twice for the same harm — once from its insurer and again from the wrongdoer (id. at 87; Teichman v Community Hosp. of W. Suffolk, 87 NY2d 514, 521 [1996]; see CPLR 4545).
The defendants argue that, the foregoing notwithstanding, by virtue of CPLR 4545, the Health Plan has no subrogation claim to protect. Although the Court of Appeals has never addressed the question of whether a health insurer may intervene in an ongoing tort action,[4] the Appellate Divisions have split on the issue (compare Marshall v 426-428 W. 46th St. Owners, Inc., 33 AD3d 444 [1st Dept 2006], Berry v St. Peter’s Hosp. of City of *776 Albany, 250 AD2d 63 [3d Dept 1998], lv dismissed 92 NY2d 1045 [1999] and Humbach v Goldstein, 229 AD2d 64 [2d Dept 1997], lv denied 91 NY2d 921 [1998], with Poblocki v Todoro, 55 AD3d 1346 [4th Dept 2008] and Omiatek v Marine Midland Bank, N.A., 9 AD3d 831 [4th Dept 2004]), with the majority holding intervention impermissible. Thus, in Humbach v Goldstein (229 AD2d 64, 67 [1997]), the Second Department denied intervention, holding that CPLR 4545 would preclude the health insurer’s subrogation claim. The Humbach Court ruled:
“Pursuant to principles of equitable subrogation, an ‘insurer, having paid losses of its insured, is placed in the position of its insured’ (Winkelmann v Excelsior Ins. Co., 85 NY2d 577, 581). That right arises once the insurance carrier makes payment on behalf of the insured (see, Teichman v Community Hosp., supra, at 521). However, the carrier, as subrogee, stands in the shoes of the policyholder (see, United States Fid. & Guar. Co. v Smith Co., 46 NY2d 498, 504). As the Court of Appeals noted in Federal Ins. Co. v Arthur Andersen & Co. (75 NY2d 366, 372): ‘The rights of an insurer as equitable subrogee against a third party are derivative and limited to such rights as the insured “would have had against such third party for its default or wrongdoing”. (Ocean Acc. & Guar. Corp. v Hooker Electrochemical Corp., [240 NY 37], at 47.) Thus, the insurer can only recover if the insured could have recovered and its claim as subrogee is subject to whatever defenses the third party might have asserted against its insured’ . . .
“However, since Oxford [the insurer] paid the plaintiffs medical costs, CPLR 4545 would be applicable to any verdict in the instant action. Oxford could not recover, by verdict after trial, the cost of the plaintiffs medical care which was reimbursed by Oxford, without running afoul of the rule that Oxford’s rights of recovery under subrogation cannot be any more than the plaintiff’s rights of recovery, or without running afoul of CPLR 4545” (229 AD2d at 66-67).
In contrast, the Fourth Department has allowed intervention, holding that the purpose of CPLR 4545 is to prevent a double recovery by the plaintiff, not to insulate a tortfeasor from reimbursing an insurer for payments occasioned by the defend *777 ant’s tort (Omiatek v Marine Midland Bank, N.A., 9 AD3d 831, 832 [2004]). Subsequent decisions of the Court of Appeals have ratified the Fourth Department’s position. Thus, in Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc. (3 NY3d 200, 208 [2004]), the Court of Appeals held:
“We further reject Empire’s argument that in view of the collateral source rule of CPLR 4545 (c), the effect of our decision [holding the insurance company lacked standing to bring an action under General Business law § 349] is to immunize the tobacco companies from liability. The rule was enacted in 1986 in order to prevent duplicate recoveries for, among other things, costs of medical care (see Fisher v Qualico Contr. Corp., 98 NY2d 534, 538-539 [2002]). This statute does not alter Empire’s traditional remedy because ‘a defendant still may he held responsible in subrogation’ (Fisher, 98 NY2d at 540)” (emphasis added).
Moreover, it was held in Fasso v Doerr (12 NY3d 80, 88, 90 [2009]) that a subrogated insurer does not stand in the shoes of its insured with respect to all issues and that “nothing in the language or legislative history of CPLR 4545 indicates that the Legislature intended to alter the established rules of equitable subrogation.” Thus, the bases upon which Humbach was decided have been overturned by subsequent Court of Appeals decisions such that it can no longer be contended that Humbach or CPLR 4545 bars intervention.
Having said that, in Fasso the Court of Appeals noted that intervention by a health insurer can create an adversarial posture between plaintiff and its insurer that may interfere with the progress of a case or its settlement and invited the Legislature to address the issue (12 NY3d at 90). In response, the Legislature enacted General Obligations Law § 5-335 which provides, generally, that where a plaintiff settles with a tort defendant, it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, and, except where there is a statutory right of reimbursement, that the parties to the settlement shall not be subject to any claim for reimbursement (see n 3, supra) or subrogation. Thus, where a plaintiff and defendant settle, the health insurer’s contract and subrogation rights may be cut off. General Obligations Law § 5-335 only applies where there is a settlement, however, and thus does not implicate a health insurer’s subrogation rights where the action goes to verdict (Rink v State of New York, 27 Misc 3d 1159, 1164 [Ct Cl 2010]).
*778 The effect of this statue is thus multifaceted. On the one hand, it limits, without entirely abrogating, a health insurer’s contract and subrogation rights. On the other hand, it removes the only remaining argument against intervention: the intervenor’s ability to interfere with the case and block a settlement. In fact, since the enactment of General Obligations Law § 5-335, tort defendants have an added incentive or pressure to settle, thereby unilaterally cutting off an insurer’s subrogation claims against them prior to their attaching by verdict (see Patrick Connors, Expert Analysis, New York Practice, New Laws After ‘Fasso’ Leave Health Insurer Out in the Cold, NYLJ, Jan. 28, 2010, at 3, col 1). It is therefore not surprising that the plaintiff has not opposed the Health Plan’s intervention while the defendants have.
For the foregoing reasons, the motion to intervene is granted (Poblocki v Todoro, 55 AD3d 1346, 1347 [2008]).

. Apparently the plaintiff initially thought the Health Plan had a lien for the benefits it paid.

. The action was settled against defendants Elizabeth H. Moseley, M.D., Imaging On Call, LLC and Imaging On Call, EC.

. Defendants Maldjian object that the Health Plan’s claim for reimbursement of its payments under the insurance contract is premature until such time as plaintiff recovers same from the defendants. While true (Teichman v Community Hosp. of W. Suffolk, 87 NY2d 514, 520 [1996]), it is irrelevant inasmuch as the Health Plan is not now seeking to assert a contract reimbursement claim against the plaintiff but an equitable subrogation claim against the defendants.

. In Fasso v Doerr (12 NY3d 80 [2009]), the Court dealt with the rights of a health insurer which had intervened in an ongoing tort action. As the intervention had been granted without objection, the propriety of the intervention was not before the Court (id. at 90).