13-3972-cv
*World Trade Ctr. Props. LLC v. QBE Int'l Ins. Ltd.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of September, two thousand fifteen.

PRESENT:

JOSÉ A. CABRANES,
CHESTER J. STRAUB,
DEBRA ANN LIVINGSTON,

*Circuit Judges*.

———————————————————————————

WORLD TRADE CENTER PROPERTIES LLC, 1 WORLD TRADE CENTER LLC, 2 WORLD TRADE CENTER LLC, 3 WORLD TRADE CENTER LLC, 4 WORLD TRADE CENTER LLC,

*Plaintiffs-Appellants*,

- v. -                                    No. 13-3972-cv

QBE INTERNATIONAL INSURANCE LTD., INDUSTRIAL RISK INSURERS, QBE INSURANCE (EUROPE) LTD. F/K/A QBE INTERNATIONAL INSURANCE LTD., LONDON SYNDICATES NUMBERED 1212, LONDON SYNDICATES NUMBERED 79, LONDON SYNDICATES NUMBERED 2791,

*Defendants-Appellees*,

GREAT LAKES REINSURANCE (UK) PLC, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SYNDICATES

1

NUMBERED 33, 1003, 2003, 1208, 1243, 0376, 1225, 1212, 79, 506, 2791, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SYNDICATES NUMBERED 33, 1003, 2003, 1208, 1243, 0376 AND 1225, ALLIANZ GLOBAL RISKS US INSURANCE COMPANY F/K/A ALLIANZ INSURANCE COMPANY,

*Defendants.*

_____

TYRONE R. CHILDRESS (Donald R. Erlandson, *on the brief*), Jones Day, Los Angeles, CA; Meir Feder, Jones Day, New York, NY; Richard A. Williamson, Jason T. Cohen, Flemming Zulack Williamson Zauderer LLP, New York, NY, *for Plaintiffs-Appellants.*

BARRY R. OSTRAGER (Mary Kay Vyskocil, Jeffrey E. Baldwin, *on the brief*), Simpson Thacher & Bartlett LLP, New York, NY, *for Defendant-Appellee Industrial Risk Insurers.*

SCOTT S. KATZ (Carol M. Rooney, Jessica M. Skarin, *on the brief*), Butler Pappas Weihmuller Katz Craig LLP, Tampa, FL, *for Defendants-Appellees QBE Insurance (Europe) Ltd., London Syndicate Numbered 1212, London Syndicate Numbered 79, London Syndicate Numbered 2791.*

**UPON DUE CONSIDERATION**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED** in part, **VACATED** in part, and **REMANDED**.

Plaintiffs World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC, and 4 World Trade Center LLC (collectively, "WTCP") appeal from a September 20, 2013 judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*) in favor of defendants Industrial Risk Insurers ("IRI") and

QBE Insurance (Europe) Ltd., London Syndicate Numbered 1212, London Syndicate Numbered 79, and London Syndicate Numbered 2791 (collectively, "QBE," and together with IRI, "Defendants"). Defendants are property insurers that insured WTCP against damage to certain buildings at the World Trade Center leased by WTCP and destroyed in the terrorist attacks of September 11, 2001. Following the attacks, litigation between WTCP and its insurers, including Defendants, culminated in a settlement in which WTCP received a total of roughly $4.1 billion. The insurers brought subrogation claims against several airlines and affiliated companies that they claimed were responsible for the damages suffered by WTCP, and these claims were ultimately settled for roughly $1.2 billion. *See In re Sept. 11 Prop. Damage Litig.*, 650 F.3d 145 (2d Cir. 2011). In this action, WTCP claims that Defendants' insurance policies entitle it to a portion of Defendants' share of the subrogation proceeds.

Two rulings are at issue in this appeal.[1] First, in an opinion dated November 27, 2012 denying the parties' cross-motions for summary judgment, the district court held that Defendants' policies would entitle WTCP to a portion of the subrogation proceeds only if WTCP could show that it had suffered "legally recoverable tort damages" in excess of its $4.1 billion insurance recovery. *In re Sept. 11 Litig.*, 906 F. Supp. 2d 295, 305 (S.D.N.Y. 2012) ("*2012 Decision*"). Second, in a separate case involving tort claims brought by WTCP against airlines and security contractors allegedly liable for the September 11 attacks (the "Tort Action"), the district court held that WTCP could not obtain a damages award because its maximum potential tort recovery under New York law

---

[1] Substantially for the reasons given by the district court, we agree that it had supplemental jurisdiction over WTCP's claims, which are "deeply entwined with much of the September 11 litigation" over which the district court was given jurisdiction by the Airline Transportation Safety and System Stabilization Act of 2001, 49 U.S.C. § 40101. *In re Sept. 11 Litig.*, 906 F. Supp. 2d 295, 302 (S.D.N.Y. 2012); *see* 28 U.S.C. § 1367.

3

was $2.805 billion, an amount that had already been (more than) fully "offset" by the $4.1 billion settlement with its insurers. *In re Sept. 11 Litig.*, 957 F. Supp. 2d 501 (S.D.N.Y. 2013); *In re Sept. 11 Litig.*, 590 F. Supp. 2d 535 (S.D.N.Y. 2008); *see* N.Y. C.P.L.R. 4545(c) (providing that tort damage awards must be offset by amounts received from collateral sources). In the instant case, the district court gave collateral estoppel effect to its holding in the Tort Action, and—because WTCP's legally recoverable tort damages did not exceed its $4.1 billion insurance recovery—granted summary judgment to Defendants. *In re Sept. 11 Litig.*, Nos. 21-mc-101, 10-cv-1642, 2013 WL 5979670, at *2-3 (S.D.N.Y. Sept. 18, 2013) ("*2013 Decision*").

In addition to filing the instant appeal, WTCP appealed the district court's holding in the Tort Action. In an opinion issued along with this summary order, we affirm the relevant orders in the Tort Action insofar as they held that WTCP's potential tort recovery must be offset by its $4.1 billion insurance settlement, but vacate those orders insofar as they held that WTCP's maximum potential tort recovery was $2.805 billion. *In re Sept. 11 Litig.*, --- F.3d ----, Nos. 13-3619-cv, 13-3782-cv, slip op. at __ (2d Cir. July __ , 2015). Because it is conceivable that the district court will, on remand in the Tort Action, find that WTCP has legally recoverable tort damages in excess of its insurance settlement, we vacate the district court's judgment in the instant case as well and remand for further proceedings.[2]

For the reasons detailed below, however, we affirm the *2012 Decision* and *2013 Decision* insofar as they held that Defendants' insurance policies entitle WTCP to a share of the subrogation proceeds only if WTCP has legally recoverable tort damages exceeding its $4.1 billion insurance

---

[2] In light of his partial dissent in the *In re September 11 Litigation* appeals, under which the issues presented in this appeal might be moot, Judge Straub joins only in the vacatur and remand and not in the substantive discussion that follows.

settlement. Because the district court reached that conclusion in a summary judgment setting, we review it de novo, viewing the evidence in the light most favorable to WTCP and resolving any factual disputes in its favor. *See* Fed. R. Civ. P. 56(a); *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000). A contractual ambiguity will generally preclude summary judgment unless a reasonable jury would be required to resolve the ambiguity in one party's favor. *See 3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 746-47 (2d Cir. 1999).

We consider WTCP's claims against QBE first. QBE insured WTCP pursuant to the WilProp 2000 policy form (the "WilProp Form"). In relevant part, the WilProp Form provides that "[i]f any amount is recovered as a result of [subrogation] proceedings, the net amount recovered after deducting the costs of recovery shall be distributed first to the insured in reimbursement for the deductible amount retained and for any uninsured loss or damage resulting from the exhaustion of limits under this policy or primary or excess policy(ies)." J.A. 84-5. The parties' dispute centers on the undefined term "any uninsured loss or damage": WTCP claims that this term means any loss that would have been insured under the policy but for the policy's liability limit (or WTCP's "policy-defined losses"), while QBE argues that the term means legally recoverable tort damages—that is, the recovery to which New York tort law would entitle WTCP if it were to sue the tortfeasors itself. The district court sided with QBE, holding that the term unambiguously refers to legally recoverable tort damages. We agree.

"Subrogation is the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss." *Winkelmann v. Excelsior Ins. Co.*, 650 N.E.2d 841, 843 (N.Y. 1995). By permitting the insurer (instead of the insured) to sue the tortfeasor, subrogation forecloses insureds from recovering

5

twice for the same injury while also preventing tortfeasors from escaping liability. *See id.*; 16 Steven Plitt et al., *Couch on Insurance* § 222:8 (3d ed.). Although subrogation is an equitable doctrine, parties to insurance policies frequently include subrogation provisions in their policies, in which case their "rights must be governed by the terms of the policy." *J&B Schoenfeld, Fur Merchs., Inc. v. Albany Ins. Co.*, 492 N.Y.S.2d 38, 41 (App. Div. 1985). Still, when giving meaning to contractual subrogation provisions, courts appropriately rely on equitable subrogation principles on the assumption that, absent an evident intention to the contrary, the parties meant to incorporate those principles. *See, e.g.*, *Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency Inc.*, 644 F.3d 166, 169-70 (2d Cir. 2011); *see also Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) ("[T]he court 'must be informed of the meaning of the language as generally understood in [the parties'] business, in light of the customs and practices of the business.'" (quoting *Fox Film Corp. v. Springer*, 8 N.E.2d 23, 24 (N.Y. 1937))).

Equitable subrogation principles include the "made whole rule," under which an insurer's recovery against a tortfeasor in a subrogation lawsuit is limited to "those funds and assets that remain after the insured has been compensated." *Fasso v. Doerr*, 903 N.E.2d 1167, 1170 (N.Y. 2009). Equity deems an insured to be fully compensated (or "made whole") for purposes of this rule when it has recovered its legally recoverable tort damages. *See, e.g.*, *Global Int'l Marine, Inc. v. U.S. United Ocean Servs., LLC*, No. 09-cv-6233, 2011 WL 2550624, at *15 (E.D. La. June 27, 2011); *Tampa Port Auth. v. M/V Duchess*, 65 F. Supp. 2d 1299, 1302 (M.D. Fla. 1997); *Travis v. Rialto Furniture Co.*, 220 A.2d 179, 181 (R.I. 1966); *Birch v. Fire Ins. Exch.*, 122 P.3d 696, 699-700 (Utah Ct. App. 2005); *Sorge v. Nat'l Car Rental Sys., Inc.*, 512 N.W.2d 505, 509 (Wis. 1994); *see also* Elaine M. Rinaldi, *Apportionment of Recovery Between Insured and Insurer in a Subrogation*

6

*Case*, 29 Tort & Ins. L.J. 803, 815 (1994) ("[T]he insured's right to recover damages in excess of those paid by the insurer is governed by the law of the local jurisdiction on recoverable damages, not by the total amount for which an insured could have been insured."). Indeed, the contrary rule—that an insured is entitled to priority over subrogation proceeds if it has policy-defined losses in excess of its policy's liability limit—would arbitrarily grant the insured a brand new entitlement, outside both tort law and contract law, solely by virtue of its insured status. *See 2012 Decision*, 906 F. Supp. 2d at 304 ("Under Plaintiffs' interpretation, Plaintiffs could recover more from [QBE] than Plaintiffs could recover from Aviation Defendants even if Plaintiffs realized their full tort recovery from Aviation Defendants.").

WTCP does not dispute that, under equitable subrogation principles, an insured has been made whole when it has received its legally recoverable tort damages; it argues only that the WilProp Form does not merely restate that equitable rule. It is true, of course, that parties are free to contract around equitable subrogation principles, and nothing prevented the parties from clearly defining WTCP's "wholeness" by reference to its policy-defined losses. But we see nothing in the phrase "any uninsured loss or damage," or in the rest of the WilProp Form, to suggest that the parties here actually did so. We therefore agree with the district court that "the phrase 'any uninsured loss or damage' unambiguously refers to legally recoverable tort damages and not [policy-defined] losses." *Id.* at 304.[3]

---

[3] The district court justified its conclusion in part on the ground that "[t]here would be no point to a subrogation action if [WTCP's] interpretation prevailed for subrogation would serve to fully compensate the insured rather than to mitigate the cost of insurance payments to the insurer." *2012 Decision*, 906 F. Supp. 2d at 295. We agree with WTCP that this rationale is not wholly satisfactory, since even the equitable made whole rule gives the insured priority over subrogation proceeds up to the amount of its legally recoverable tort damages.

7

We reach the same conclusion with respect to WTCP's claims against IRI. IRI insured WTCP pursuant to a form policy called the Comprehensive All Risk Form (the "C-AR Form"). In relevant part, the C-AR Form provides that "[t]he net amount of any recovery after deducting the costs of subrogation proceedings shall be divided between each party instituting such proceedings in the same proportion as each such party has borne the provable loss." J.A. 308. Just as the parties' dispute with respect to the WilProp Form focused on the term "any uninsured loss or damage," their dispute with respect to the C-AR Form centers on the term "provable loss." Unlike the WilProp Form, which follows the most common version of the made whole rule by giving the insured first priority over subrogation proceeds up to its legally recoverable damages, the C-AR Form adopts an alternative rule under which any recovery from the tortfeasor "is to be prorated between the insurer and the insured in accordance with the percentage of the original loss for which the insurer paid the insured under the policy." Rinaldi, *supra*, at 805-06. However, we agree with IRI that this particular deviation from equitable subrogation principles "does not mean . . . that the C-AR form deviates from equitable subrogation principles on the threshold question of when an insured's right to share in the tort recovery is triggered." IRI Br. at 33 n.18 (emphasis omitted). As with the WilProp Form, we see nothing in the term "provable loss" or in the C-AR Form more broadly that would indicate an intention to depart from the rule that an insured is entitled to share in subrogation proceeds only if it has uncompensated legally recoverable tort damages.

Finally, to the extent that there is any uncertainty on this point, we wish to clarify that when the district court on remand compares WTCP's legally recoverable tort damages against its $4.1 billion insurance settlement, the former should be determined without any collateral offset under

8

N.Y. C.P.L.R. 4545(c).[4] Section 4545(c) is not among the rules that measure the loss suffered by WTCP as a result of having suffered a legal wrong. Additionally, to offset WTCP's legally recoverable tort damages by collateral source payments would thwart the policies' goal of ensuring that WTCP will receive at least some subrogation proceeds so long as it has not been fully compensated for its tort-defined losses.

* * *

We have considered WTCP's remaining contentions and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED** in part, **VACATED** in part, and **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[4] It is at least arguably unclear from the *2013 Decision* whether the district court viewed WTCP's legally recoverable tort damages as $2.805 billion—the "potential tort recoveries" the court determined were available under New York law for the diminution in the value of WTCP's leasehold interests, 2013 WL 59798690, at *3—or, instead, zero—the actual damages recoverable from the defendants in the Tort Action in light of N.Y. C.P.L.R. § 4545(c).